GUY, J. Action brought by plaintiff on a promissory note for $700, dated May 29, 1905. The answer admitted the making and delivering of the note, and alleged the payment of $100 thereon, and also a counterclaim for professional services rendered by the defendant to plaintiff. The plaintiff served a reply to the counterclaim, alleging that the services of defendant were rendered to the firm of which plaintiff was a member and that the services were paid in full, and denied the other allegations of the counterclaim.

In open court, upon the trial, plaintiff, while he alleged in his verified complaint that "no part of said note has been paid," admitted the payment of $100, and by stipulation his reply was amended by striking out the allegation "that defendant shortly after said services were rendered was paid in full therefor," viz., the services set up in the counterclaim. The defendant's evidence in support of his counterclaim should have been admitted, notwithstanding plaintiff's right to recover on the note, and the dismissal of the counterclaim was erroneous. Presumptions as to the effect of giving a note do not justify the exclusion of proof to rebut such presumptions.

The dismissal of the counterclaim was based apparently on the theory that the date of the note, viz., May 29, 1905, which was subsequent to the time of the services alleged in the counterclaim, viz., December, 1904, was an acknowledgment on the defendant's part that nothing was due him for such services from plaintiff. This inference was drawn after repeated offers upon the part of defendant, which were ruled out, to prove that the note in action was the last of a series of renewals of an indebtedness existing long before the services set up in the counterclaim, and evidenced by a promissory note originally given in January, 1904, for $1,200. This evidence should have been received to rebut the presumption relied upon by the respondent.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

(72 Misc. Rep. 398.)

### MASON–SEAMAN TRANSP. CO. v. WINEBURGH.

(Supreme Court, Appellate Term. June 29, 1911.)

1. MUNICIPAL CORPORATIONS (§ 705*)—CONTRIBUTORY NEGLIGENCE.

A driver on the right-hand side of a street, who sees nothing approaching between him and a van backed up against the curb, may assume that he may proceed and pass the van safely without checking his moderate speed, and though he knows that a garage is located just beyond the van, obstructing a view of the entrance to the garage, he may assume that no one will suddenly emerge from the garage, and proceed on the wrong side of the street, and collide with him.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

2. MUNICIPAL CORPORATIONS (§ 705*)—NEGLIGENCE.

A chauffeur, who is compelled, on leaving a garage, to turn to cross on the left-hand side of a street, while his view is obstructed by a van backed against the curb, must proceed with care to the point where he can see beyond the van, and learn whether it is safe for him to proceed.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by the Mason-Seaman Transportation Company against Henry Wineburgh. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

Corbitt & Stern, for appellant.

House, Grossman & Vorhaus, for respondent.

BIJUR, J. Plaintiff sues for damages to one of its broughams as a result of its being run into by defendant's automobile on West Eighty-Ninth street, between Amsterdam avenue and Broadway. The brougham was proceeding westward. When it reached the West End Storage Warehouse, situated on the southerly side of the street, a large van was backed up against the south curb, with its horses drawn around eastward. Plaintiff's driver was unable to see the door of the garage immediately west of the storage warehouse. The driver says that, as his horses had just passed west of the van, defendant's automobile, emerging from the garage without any warning, turned east and struck the brougham at the front left wheel.

While some doubt was expressed by the learned trial judge as to plaintiff's proof that the repairs made were those necessitated by this accident, I think that the evidence sufficiently establishes that fact. The trial judge based his decision in favor of the defendant on plaintiff's contributory negligence, apparently on the theory that as plaintiff's driver could not see the entrance of the garage, which he knew was situated immediately west of the van, it was negligence on his part to drive past without taking some precautions. The question, however, must be determined by the peculiar circumstances of the case.

[1] The learned trial judge, in rendering his opinion, said to plaintiff's driver: "What right have you to run into danger?" The evidence shows that plaintiff's driver was necessarily proceeding along the proper—namely, right-hand—side of the street, and that the street was clear. In other words, there was nothing approaching him along the street to indicate that any vehicle would come in the direction opposite to that in which he was proceeding, at the point where the van stood. He was, therefore, perfectly justified in assuming that he might proceed safely without checking his speed.

[2] On the other hand, defendant's chauffeur was necessarily compelled, in turning eastward after leaving the garage, to cross to what to him was the left or wrong side of the street, and he testified that the van obstructed his view to the eastward. Under these circumstances, it was his duty to proceed with care to the point where he could see beyond the van and learn whether it was safe for him to go eastward. The evidence is plain that he did not do this.

The only conduct of plaintiff which can be singled out as constituting contributory negligence was in failing to check the moderate speed of his horses, in anticipation of defendant's emerging suddenly from immediately behind the van. There was no other possibility of

danger of collision with any other vehicle under the circumstances of this case. Plaintiff's driver, however, was perfectly justified in assuming that neither defendant nor any other person would conduct himself in so foolhardy and unwarranted a manner. Any other rule would substantially forbid serviceable traffic through a street in which there might be one or more wagons standing at, or backed up against, the curb, and would be unreasonable in and of itself.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.