## RICHARDS v. PALACE LAUNDRY CO.

No. 3399.   Decided December 24, 1919.   (186 Pac. 439.)

1. MUNICIPAL CORPORATIONS—ALL VEHICLES HAVE EQUAL RIGHTS ON STREETS. Comp. Laws 1917, sections 3978, 3985, are merely declaratory of the law of the road; and, in the absence of a regulating ordinance, all vehicles including automobiles and bicycles, have equal rights on the streets. (Page 417.)

2. MUNICIPAL CORPORATIONS—LIABILITY FOR INJURY TO BICYCLE RIDER ON WRONG SIDE OF STREET. Though when street or highway is not used by others one may drive on any part thereof, yet, when a traveler on bicycle passes from the right to the left of the center of the street he loses some of his rights, and may not be heard to complain of the conduct of those who are on the proper side of the street to the same extent as though· he also were on the proper side. (Page 417.)

3. MUNICIPAL CORPORATIONS—DRIVER OF AUTOMOBILE MAY ASSUME THAT ONE APPROACHING ON BICYCLE FROM OPPOSITE DIRECTION WILL CONTINUE ON PROPER SIDE OF STREET. Where one operating his vehicle on proper side of the street makes a survey of condition of the street ahead and observes no one coming on his

side of the street, but sees one coming toward him on the opposite side of the street, he may assume that such person will continue on the opposite side.[1]   (Page 418.)

4.   MUNICIPAL CORPORATIONS—CARE OF AUTO DRIVER APPROACHING INTERSECTION.   A greater degree of care is required of driver of automobile in approaching intersections than between street crossings.   (Page 418.)

5.   MUNICIPAL CORPORATIONS—DRIVER OF AUTOMOBILE MUST EXERCISE "ORDINARY AND REASONABLE CARE."   The care and vigilance required of one operating an automobile on city streets must always measure up to the standard required by law, which is to exercise "ordinary and reasonable care," which is that degree of care which the circumstances and surroundings require and which is commensurate with the danger that may be encountered.   (Page 418.)

6.   MUNICIPAL CORPORATIONS—DRIVER OF AUTOTRUCK NOT REQUIRED TO MAINTAIN LOOKOUT FOR VEHICLES ON OPPOSITE SIDE OF STREETS.   Driver of defendant's autotruck on proper side of street (Comp. Laws 1917, section 3978), and not on or near a crossing, could relax his vigilance, and was not bound to maintain a constant lookout for any one approaching on the opposite side of the street.[2]   (Page 419.)

7.   MUNICIPAL CORPORATIONS—ACTS OF NEGLIGENCE OF AUTOMOBILE DRIVER NOT PLEADED CANNOT BE PROVEN.   In action for injuries due to plaintiff being thrown from his bicycle in front of defendant's approaching autotruck, no act of negligence not charged could be legally proven.   (Page 420.)

8.   NEGLIGENCE—PRESUMPTION THAT PERILOUS CONDITION WHICH OUGHT TO HAVE BEEN DISCOVERED WAS DISCOVERED.   Where one owing duty to maintain a lookout could in the exercise of ordinary care and vigilance have discovered the perilous situation of plaintiff in time to have averted injury, the law presumes that he saw what he ought to have seen, and actual discovery is not necessary.[3]   (Page 422.)

9.   MUNICIPAL CORPORATIONS—PRESUMPTION IS AGAINST BICYCLE RIDER ON WRONG SIDE OF STREET.   While plaintiff thrown from his bicycle to wrong side of street in front of approaching autotruck was not a trespasser, yet the fact that he was on the wrong side of the street when he was injured created a presumption against him.   (Page 422.)

[1] Barker v. Savas, 52 Utah, 262, 172 Pac. 672.

[2] Palmer v. Railroad, 34 Utah, 484, 485, 98 Pac. 689, 16 Ann. Cas. 229.

[3] Teakle v. Railroad, 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486.

10. MUNICIPAL CORPORATIONS—DRIVER OF AUTOTRUCK NOT LIABLE UNDER LAST CLEAR CHANCE DOCTRINE. Since driver of auto-truck on proper side of street did not owe plaintiff approaching on a bicycle on opposite side of street the duty of constant look-out, the plaintiff to make out a case under the last clear chance doctrine, must show more than that autotruck could have been stopped or turned aside within a distance of ten to fifteen feet after plaintiff was thrown from his bicycle in front of the truck. (Page 422.)

11. MUNICIPAL CORPORATIONS—PLAINTIFF THROWN FROM BICYCLE IN FRONT OF APPROACHING AUTOTRUCK NOT ENTITLED TO RECOVER. In action for injuries due to plaintiff being thrown from his bicycle in front of defendant's approaching autotruck, there being a presumption of a clear roadway in favor of driver, plaintiff, to recover under the doctrine of discovered peril, must prove some positive act constituting negligence, and cannot re-cover on proof alone that, if driver had maintained a constant lookout, he could have discovered plaintiff's peril in time to have avoided the accident. (Page 423.)

12. MUNICIPAL CORPORATIONS—PLAINTIFF INJURED BY AUTOTRUCK HAD BURDEN OF SHOWING NEGLIGENCE. In action for injuries due to plaintiff being thrown from his bicycle in front of defendant's approaching autotruck, plaintiff had burden of showing negligence. (Page 423.)

13. CONSTITUTIONAL LAW—LEGISLATURE NOT COURTS TO REGULATE USE OF AUTOMOBILES. If more stringent regulations are required for use of motor vehicles on the streets, it is the duty of the Legislature, and not courts, to provide the remedy and to im-pose the required regulations. (Page 424.)

Appeal from Third District Court, Salt Lake County; *J. Louis Brown*, Judge.

Action by Leo N. Richards against the Palace Laundry Company. Judgment dismissing action, and plaintiff appeals.

AFFIRMED.

*Hutchinson & Hutchinson* and *Walton & Walton*, all of Salt Lake City, for appellant.

*M. E. Wilson*, of Salt Lake City, for respondent.

FRICK, J.

The plaintiff brought this action against the defendant, a corporation, to recover damages for personal injuries which he alleges he suffered through its negligence. The plaintiff, after stating the usual matters of inducement, in his complaint, alleges that on the 29th of May, 1917, between the hours of eight and nine o'clock a. m., "plaintiff was riding a bicycle northward on the pavement between the rails of the east street car track on said (State) street, when a certain automobile truck owned and operated by the defendant corporation was being driven southward on said street at or near the said point; that the plaintiff, in order to avoid collision with an automobile passing him from behind, veered slightly to the west when his bicycle wheel caught or slipped on the west rail of the said east street car track and threw him to the pavement immediately in the pathway of the south-bound automobile truck owned and operated by the defendant corporation; that at the time of his fall to the pavement as aforesaid the automobile truck owned and operated by the defendant corporation was distant some twenty-five or thirty feet northward; that the driver of said truck saw plaintiff fall, and knew and appreciated the danger of his position; that the plaintiff made all possible effort to withdraw his body from the pathway of the on-coming automobile truck; that the said automobile truck was driven at the rate of about nine miles per hour, and was under the control of the driver thereof, and the said defendant and its servant and driver in the exercise of ordinary care could have checked the speed of said automobile truck and changed the course thereof so as to have avoided striking and injuring this plaintiff; that the defendant and its servant and driver, well knowing and appreciating the danger to plaintiff, nevertheless carelessly and negligently failed to check the speed of the automobile truck, or to change the course thereof so as to avoid striking and injuring plaintiff, by reason whereof the said automobile truck was driven against and over this plaintiff, severely bruising and crushing his left foot."

In view of the contentions of the parties, as hereinafter disclosed, we have deemed it best to set forth the allegations stating the alleged acts of negligence in full.

The defendant filed an answer to the complaint, in which it set forth seven affirmative defenses. The only matters that need to be mentioned here, however, are that the defendant denied all acts of negligence, and admitted that the automobile truck was owned and operated by it at the time and place mentioned in the complaint. It averred that the automobile truck was being operated at the time at the rate of about fifteen miles per hour; that the plaintiff was at the time attempting to ride a bicycle at the place mentioned in the complaint; that in making such attempt "the plaintiff fell from his said bicycle and stumbled and fell immediately in front of defendant's automobile"; that the defendant was operating its automobile truck on the right-hand side of the street going south, and that the plaintiff, in attempting to ride said bicycle going north, passed from the usual or right-hand side of the street to the west or left-hand side, where the alleged injury occurred. The defendant also pleaded contributory negligence on the part of plaintiff, setting forth the facts in detail.

The plaintiff produced evidence in support of the allegations of his complaint, and, after he had rested his case, the defendant interposed a motion for nonsuit. The motion was granted by the court, and judgment dismissing the action was entered, from which plaintiff prosecutes this appeal.

The only error assigned, stating it in the language of counsel, is that "the court erred in sustaining defendant's motion for a nonsuit." The ultimate question to be decided, therefore, is, Did the district court err in not submitting the evidence to the jury for their consideration?

The evidence, in substance, shows that on the morning in question plaintiff rode a bicycle on State street between Eighth and Ninth South streets in Salt Lake City; that at the place of the accident State street is paved from curb to curb; that there are two street car tracks on State street, one immediately east and the other immediately west of the center of the street, which tracks are a number of feet apart; that plaintiff was riding his bicycle north on State street and between the rails of the east car track; that an automobile was

being driven some distance behind plaintiff—the distance is not shown—and, to get out of its way, he says he turned his bicycle to the west, and in doing so one of the bicycle wheels went into the depression or "groove," as he called it, on the side of the west rail of the east car track, in which groove or depression the flange of the street car wheel runs; that the bicycle wheel, in passing into said groove, caused the bicycle to fall, and plaintiff slipped or fell therefrom to the pavement; that in falling he fell over the center of the street, and his lower limbs extended some distance—he says from one to several feet—over the east rail of the west car track, and that while in that position the front wheel of the autotruck passed over his left foot, crushing it; that while plaintiff was riding northerly between the rails of the car track he saw defendant's autotruck about 350 or 400 feet, perhaps more, to the north, coming south toward him; that the autotruck was being driven with the west wheels thereof west of the east rail of the west car track and the east wheels thereof east of the east rail. In other words, the autotruck was west of the center or on the right-hand side of the street, with the wheels thereof astride the east rail of the west car track. Plaintiff testified that when he fell on the pavement of the street the autotruck "was twenty-five or thirty-five feet" north of him. He described his position while lying on the car track thus:

"My feet were almost west of my body. My body was to the east, and my feet were to the west."

He also testified that the autotruck in coming toward him was not turned "either east or west; it seemed to go straight along the position where it was." At the place of the accident there was a slight downgrade to the south. With respect to the speed the autotruck was going at the time, plaintiff testified:

"Why, he (the driver) was not going at an excessive speed; he was not going what I would call fast. Q. How fast was he going? A. Well, I can't say just how many miles he was going, only his statement when he came back to me, he said he wasn't going very fast. He was going about eight or ten miles an hour."

Plaintiff also testified that in his judgment the truck was traveling at the rate of about nine miles per hour. The evi-

dence also shows that the street pavement, both east and west of the car tracks, was from twenty to twenty-five feet in width; that there were no vehicles of any kind, either on the east side or on the west side of the car tracks, except the automobile mentioned by the plaintiff, which, however, no other witness saw, and no obstacles of any kind were on the street; that the accident occurred some distance from any street crossing, on a clear morning between eight and nine o'clock; that the street was dry and in good condition throughout its entire width; that when plaintiff fell to the west of the center of the street he was ''facing the south''; that the truck was right upon him, and he ''had no time to look''; that the driver of the truck, plaintiff says, ''seemed to turn to the westward just as he came to me''; that the front wheel of the truck passed over plaintiff's foot, and the rear wheel passed to the west of it, and did not touch it; that if plaintiff's wheel, he says, had not gone into the groove, he would have passed on safely; that when he fell he was not stunned nor hurt, and immediately after he fell he tried to get out of the way of the on-coming truck, and that in doing so he moved eastward, ''anywhere from a foot and a half to two or three feet''; that when he fell the truck might only have been twenty feet from him; that in stating the distance it was from him he was merely giving his best judgment. Plaintiff also produced evidence that a truck loaded as was defendant's truck, and going at the rate of speed it was going, could have been stopped in a distance of from ten to twelve feet, and that within that distance it could have been veered or turned to the west a distance of from ten to twelve feet. In respect to the distance that the truck was from plaintiff when he fell he also testified as follows:

"Q. Mr. Richards, you gave a deposition relative to this accident at one time, did you? A. Yes, sir. Q. And in that deposition I will ask you whether or not I propounded the following question, which I am going to read to you: 'And immediately after going down you looked around over your shoulder?' 'Yes, sir,' did you answer? A. Yes, sir. If it is on there I certainly did, yes, sir. 'Q. And you saw this automobile five or six feet from you? A. I should judge it was about that distance.' Did you so answer?

A. Yes, sir. Q. That was true? A. To the best of my judgment; yes, sir."

The foregoing fairly reflects the substance of the evidence which has any bearing upon how the accident occurred. There is no question respecting the sufficiency of the evidence with regard to the injury, etc.

Plaintiff's counsel very earnestly insist that the court erred in not submitting the evidence to the jury, while defendant's counsel with equal earnestness contend that the ruling of the court in withdrawing the case from the jury was right: (1) Because there is no evidence justifying a finding of negligence on the part of the driver of the autotruck; and (2) if there were such evidence, then the evidence, nevertheless, without conflict, conclusively shows that the plaintiff was guilty of contributory negligence. A mere cursory reading of the allegations of the complaint makes clear that the only issue that is presented is the one whether the driver of the autotruck did, or, in the exercise of due care, ought to have seen plaintiff's peril in time to have avoided the injury. In other words, the only ground upon which plaintiff bases his right to recover in this case is under the doctrine of what is commonly called the last clear chance or discovered peril. The defendant is not charged with having violated any duty of any kind, except in not avoiding the accident after the plaintiff had fallen from his bicycle onto the street pavement, as before stated. While the undisputed facts and circumstances present a case which in many respects is peculiar, if not unique, yet the legal principles upon which the decision must rest are well recognized by the courts. The fact is conceded that the driver of the autotruck was passing on the right-hand side of the street, where, under our statute (Comp. Laws Utah 1917, section 3978), he had a right to drive. It is also clear that in this state motor vehicles have the same rights upon the highways and streets as other vehicles. Id. section 3985. In California a statute like ours has been construed to mean that the vehicle or traveler must keep to the right of the center of the street or highway. *Stohlman* v. *Martin,* 28 Cal. App. 338, 152 Pac. 319. The Supreme Court of Washington has con-

strued a similar statute to the same effect. *Ballard* v. *Collins,* 63 Wash. 493, 115 Pac. 1050.

The statute, however, is merely declaratory of "the law of the road"; and, in the absence of a regulating ordinance—and none is alleged or proved in this case—all vehicles, including automobiles and bicycles, have equal rights on the streets. *Wistrom* v. *Reddick Bros.,* 6 Cal. App. 671, 92 Pac. 1048; *Diehl* v. *Robberts,* 134 Cal. 164, 66 Pac. 202; Elliott, Roads and Streets (3d Ed.) section 1105; *Cook* v. *Fogarty,* 103 Iowa, 500, 72 N. W. 677, 39 L. R. A. 488; Babbitt, Motor Vehicles, section 335.

While in case the street or highway is not used by others one may drive on any part thereof, yet, when a traveler passes from the right to the left of the center of the street he, to say the least, loses some of his rights, and may not be heard to complain of the conduct of those who are on the proper side of the street to the same extent as though he also were on the proper side. In *Presser* v. *Dougherty,* 239 Pa. 312, 86 Atl. 854, the decision is correctly reflected in the headnote, where the law is stated thus:

"The mere fact that plaintiff collided with the automobile does not raise any presumption of negligence, especially where the plaintiff was riding on the wrong side of the street, and there was no evidence that the automobile was being operated at a dangerous rate of speed."

In Babbitt, Motor Vehicles, section 356, it is said:

"A driver on the right-hand side of the road has a right to assume that vehicles coming in the opposite direction will not violate the law of the road."

That is, that they will continue in the direction they are coming on the proper side of the road or street.

In *Ballard* v. *Collins,* supra, the rule is tersely stated in the following words:

"A person using a street as a highway has the right to presume that the law of the road will be observed."

That is, a person will not pass to the wrong side of the street. To the same effect are *Trout Auto Livery Co.* v. *People's G. L. & C. Co.,* 168 Ill. App. 56, 4 N. C. C. A., page 11;

*Mason-Seaman Transp. Co.* v. *Wineburgh,* 72 Misc. Rep. 398, 130 N. Y. Supp. 178.

While the law imposes the duty on every person who operates a vehicle on the streets, and especially on one who operates a motor vehicle or automobile, to keep a proper lookout ahead (*Barker v. Savas,* 52 Utah 262, 172 Pac. 672, and cases cited), yet where one who is operating his vehicle on the right-hand side of the street makes a survey of the condition of the street ahead of him, and in doing so he observes no one coming on his side of the street, but sees one or more coming towards him on the opposite side of the street, he has the right to assume that such person or persons will continue onward on the opposite side of the street, and not encroach     3 upon his side. Until the contrary is made to appear, it may also be presumed that the driver of any vehicle will perform his duty in maintaining a proper lookout ahead, and that in doing so, if there is no one on his or the right-hand side of the street, but there is a traveler coming on the opposite side of the street at a place where there is no probability whatever that the vehicle of the driver and the vehicle of such traveler will meet, much less collide, the driver may act accordingly.

In this case the driver of the autotruck was required to exercise ordinary and reasonable care and vigilance under the conditions and circumstances surrounding him.     4, 5 The law under certain conditions and circumstances requires greater vigilance and care on the part of the operator of a vehicle, and especially of an automobile, in order to constitute ordinary care and vigilance than under other conditions and circumstances. If one operates an auto vehicle, which is a swift and silently moving machine, in a crowded city street, a high degree of care and vigilance is required, and the driver should not relax that care and vigilance, but keep a constant lookout to prevent collisions with and injury to others. But even in a crowded street a greater degree of care and vigilance is required in approaching intersections and crossings where both pedestrians and vehicles of all kinds have a right to pass both ways than is the case between street

crossings. The care and vigilance that is required must always measure up to the standard required by law, which is to exercise ordinary and reasonable care under all the circumstances. The exercise of ordinary and reasonable care, therefore, means that degree of care which the circumstances and surroundings require, and which is commensurate with the danger that may be encountered. See Elliott, Roads and Streets (3d Ed.) section 1118.

The driver of the autotruck in this case, therefore, in looking down State street ahead of his truck, it may be assumed, saw the plaintiff approaching on his bicycle on the opposite side of the street. In looking down the street, it is but reasonable to assume that he saw no one on his side of the street, since there was no one there to be seen; and, in view of the further fact that he was not on, near to, or approaching a crossing where both vehicles and pedestrians may pass either or both ways, he had a right to relax his vigilance, and was not required to do more than to maintain such a lookout as would prevent his colliding or coming in contact with any one on his side of the street. As we have seen, the law authorized the driver of the autotruck to presume, and therefore to act on the presumption, that neither the plaintiff nor any one else would pass over on to the wrong side of the street, at least not without giving a proper signal or warning. In view of these legal presumptions the driver was not required to keep a constant lookout ahead for the plaintiff or for any one else. It is therefore not true, as plaintiff's counsel insist, that it was the driver's duty to maintain a constant lookout, for three reasons: (1) Because he could rely on what was obvious to him, namely, that there was no one on his side of the street; (2) that if he saw the plaintiff or any one else on the opposite side of the street he had the legal right to assume that he would continue on that side; and (3) if it be said that he was required to maintain a constant lookout for any one passing on his side of the street he, nevertheless, was not required to do that for any one passing on the opposite side. If, therefore, a traveler on the driver's side of the street might, uder proper circumstances and conditions, complain of

his lack of vigilance, yet it does not follow from that fact that one passing from the opposite side of the street to the driver's side could also be heard to complain. Legal rights and duties arise from the legal relationships of the parties. It often happens that while one standing in a particular relationship to an alleged wrongdoer may complain, another standing in a different relation may not do so, although both are in some way connected with the same transaction. The doctrine is illustrated and applied in *Palmer* v. *Railroad*, 34 Utah, 484, 485, 98 Pac. 689, 16 Ann. Cas. 229. It must be remembered that there is not a scintilla of evidence in this record which tends to prove that the driver of defendant's automobile truck saw the plaintiff fall upon the street, or that he saw him in time to have stopped the truck before passing over his foot, or in time to have steered the auto away from the plaintiff.

In this connection it is important to keep in mind the fact that the right of recovery in this case is entirely based upon the so-called last clear chance doctrine. No other act of negligence is charged, and hence none other could legally have been proved. In view that there is no evidence whatever which tends to prove that the driver of the autotruck actually saw the plaintiff after he fell to the pavement of the street, and in time to have avoided the injury, defendant's counsel earnestly contends that there is a total lack of evidence to prove the only act of negligence charged in the complaint. Counsel contends that in view that it is not shown that the driver of the truck actually saw and discovered plaintiff's peril in time to have avoided injuring him, therefore the defendant is not liable, even upon the doctrine of the last clear chance. While it is true that in case of a trespasser it must be shown that the person who it is alleged caused the injury actually saw the trespasser in his perilous condition in time to have avoided the injury by the exercise of ordinary care (*Teakle* v. *Railroad*, 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; Id., 36 Utah, 29, 102 Pac. 635), yet is that also necessary in a case where the plaintiff was not a trespasser although he may only have had a qualified right to be where he was at the time he was injured? Under such cir-

cumstances, while the driver of the autotruck. as we have seen, had a right to rely upon the presumption that the plaintiff would continue on the side of the street he was on, and therefore did not owe plaintiff the same measure of duty that he owed to those passing on the driver's side (*Barker* v. *Savas*, supra), nevertheless, the driver was required to exercise reasonable care under all the circumstances; that is, to keep such a lookout as the conditions surrounding him required. From this it follows that although the plaintiff did not have the same right on the left-hand side of the street in passing northward as had those who were passing southward on the right-hand side of the street, yet he was not a trespasser. He was very much in the same situation that a stranger would be in going onto the premises of one conducting business with the public, where such stranger went onto the premises merely for the purpose of obtaining some information for his own benefit. While under such circumstances the owner of the premises who carried on the business would owe such a stranger the duty of exercising some degree of care for his safety, since the stranger would not be a trespasser, yet he would not owe such stranger the same duty that he would owe to one whom he had specially invited to come onto the premises upon a matter of business, in which he, as the owner of the premises, had a special interest. It is quite true that many courts hold that one cannot be charged with negligence under the last clear chance doctrine unless he actually saw the perilous condition of the plaintiff in time to have avoided injuring him. See 20 R. C. L. page 141, section 116, where the cases following the foregoing rule are in part collated. See. also, *Twitchell* v. *Thompson*, 78 Or. 285, 153 Pac. 45, and cases cited. Upon the other hand, it is also true that many courts hold that the rule just stated applies only in cases of trespassers, for the reason that as to them the law imposes no duty to keep a lookout. In an exhaustive note to the case of *Bourrett* v. *Chicago N. W. Ry.*, 36 L. R. A. (N. S.) at page 958, the annotator, in stating the rule applicable to cases where the law imposes the duty of keeping a constant lookout, says:

" * * * The decided tendency, though there is a conflict on the subject, is toward the view that the failure of defendant to dis-

cover the danger is sufficient to sustain the doctrine, and that the actual discovery of the danger is not necessary, if, *under the circumstances, there was a duty incumbent upon the defendant to discover the danger and the performance of that duty would have enabled the defendant to avert the accident.*" (Italics ours.)

See, also, note to *Bogan* v. *Carolina C. R. Co.,* 55 L. R. A. 418.

This court is, however, firmly committed to the rule just stated, namely, that in case there is a duty owing to the plaintiff to maintain a lookout, then, if the person charged with causing the injury in the exercise of ordinary care and vigilance could have discovered the perilous situation of the complainant in time to have averted injuring him, the law presumes that the person charged with negligence saw what he ought to have seen, and actual discovery is not necessary. *Teakle* v. *Railroad,* 32 Utah, 276, 90 Pac. 402, 10 L. R. A. (N. S.) 486; Id., 36 Utah 29, 102 Pac. 635. In view that this court is committed to the rule just stated it is not necessary to review further the great number of cases upon this subject. The rule just stated, however, implies that the circumstances are such that there was something more than a mere qualified duty to maintain a lookout.

In this case, as we have seen, although the plaintiff was not a trespasser, yet the fact that he was on the wrong side of the street when he was injured created a presumption against him. 2 Cooley, Torts (3d Ed.) 1423; *Neal* v. *Rendall,* 98 Me. 69, 56 Atl. 209, 63 L. R. A. 668. All the authorities are to the same effect. For what is meant by "wrong side of the street," see Babbitt, Motor Vehicles, section 340.

The driver of the autotruck thus having the legal right to presume that the plaintiff would not encroach upon the driver's side of the street, did not owe the plaintiff the duty of a constant lookout, and hence, to hold the defendant liable in this action, the plaintiff, in order to make out a case in law, is required to prove more than the mere fact that the autotruck could have been stopped or turned aside in the distance of ten or fifteen feet. True, the plaintiff testified that in his judgment the autotruck was a distance of from twenty-five to thirty-five feet from him when he fell onto the

pavement. No one can read his testimony, however, without becoming thoroughly convinced that the distance given by him is a mere estimate. Indeed, it is largely in the nature of a guess or conjecture.

If this case were one, however, where it was the duty of the driver to maintain a constant lookout, as was the case in *Barker* v. *Savas,* supra, we would, notwithstanding **11, 12** the uncertainty of plaintiff's testimony, feel constrained to hold that the question of whether the driver **ought** to have seen the plaintiff in time to have avoided the injury was for the jury. Under such circumstances, however, there would have been no presumption of a clear roadway in favor of the driver, as is the case here. Where there is such a presumption the plaintiff must prove more than merely to show that if the driver had maintained a constant lookout he could have discovered his peril in time to have avoided the accident. That principle applies only in cases where the duty to maintain a lookout is constant or continuous. The burden to show negligence was on plaintiff, and no negligence is shown until something is made to appear from which negligence may reasonably be inferred. Is negligence shown where nothing is made to appear except that the driver of the vehicle who was lawfully passing on the right side of the street, and that in doing so came in contact with one who had intruded onto the wrong side of the street, but had done so when the driver was still such a distance away that if he had maintained a constant lookout he could have discovered the plaintiff and have avoided the injury? Clearly not. That might be so where there was no presumption of a clear street in favor of the driver. Where that presumption obtains, as in this case, however, the plaintiff must prove some positive act or omission constituting negligence. That is, a failure to perform some duty imposed by law. If the plaintiff had thus shown that the driver was such a distance away that notwithstanding the presumption in his favor he, nevertheless, should have looked, or that his conduct in operating the truck was such from which negligence could be inferred, the case would be different. The presumption, however, was in favor of the driver,

and until it is overcome by competent evidence plaintiff was not entitled to recover as matter of law.

To permit a recovery under the undisputed facts and circumstances of this case, or to permit a jury to find against the defendant, would, to say the least, be tantamount to permitting the plaintiff to penalize the defendant on account of plaintiff's own misfortune. The defendant is entitled to the protection that the law affords it in using the streets. This right it has the same as any one else using the streets, and it is our duty to protect it in the exercise of that right. That can only be done by enforcing the law and legal presumptions as they exist. If more stringent regulations are required with respect to the use of automobiles or motor vehicles on the streets, it is not only the province, but the duty, of the legislative power, and not of courts, to provide the remedy and to impose the required regulations.

In disposing of this case we have not considered the question of contributory negligence urged by the defendant on the part of the plaintiff in so operating his bicycle as to force the wheel thereof into the groove next to the rail on the street car track. In view of the conclusion reached that question becomes immaterial, and hence we express no opinion upon it.

From what has been said, it follows that the judgment of the district court is right, and therefore should be, and it accordingly is affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.