## FRIEDE v. TOYE BROS. YELLOW CAB CO., Inc.*
### No. 14856.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

John P. Sullivan and David Sessler, both of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Wood Brown, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an appeal from a judgment awarding plaintiff $1,500 as damages for physical injuries resulting from a collision between a Chevrolet automobile and a Yellow taxicab.

Plaintiff, Vladimir Friede, was a passenger in the taxicab when, at about 4 o'clock in the afternoon of September 30, 1932, it collided with an automobile operated by the minor son of Ernest D. Rogers at the intersection of Carondelet and Second streets. He brought this suit for damages on account of injuries sustained in that accident against Rogers and the Toye Brothers Auto & Taxicab Company, Inc., the owners and operators of the Yellow cab, claiming $5,000.

Rogers made no defense and judgment was had against him by default and against the Taxicab Company after a hearing upon the merits.

Three witnesses testified concerning the manner in which the accident happened; Friede, the plaintiff; Joseph Cuccia, the driver of the taxicab; and Fred Gruner, a bystander. The plaintiff's version of the accident is to the effect that he became a passenger in the cab at some point on Napoleon avenue for the purpose of being transported to his office; that the speed of the cab was excessive and that he admonished the driver to that effect without avail; that the cab, proceeding along Carondelet street, entered the intersection of Second street at a speed of 25 or 30 miles an hour and collided with the Chevrolet in the center of the intersection, with the result that the taxicab was turned over and came to rest on its side a short distance beyond Second street.

The taxicab driver gave the following account:

"I was coming down Carondelet about 20 or 22 miles an hour. About 75 feet from Second Street, I took my cab out of gear and drifted down to Second, which is a blind corner, stopped, blew my horn and looked out Second Street. There was a car parked about

*Rehearing denied Oct. 1, 1934.

25 feet from Carondelet. I looked out Second Street, about a third of a block, seen nothing coming, put my cab into first gear and started over. In the center of Second Street I shifted to second gear, stepped on the gas, put my foot on the gas, and the rear of my cab was about past the downtown curbstone when this Chevrolet coupe struck me in the left rear and turned me over on the right side. As my cab turned over the top of the cab struck a fruit peddler's wagon, left rear wheel. The wagon was on Carondelet Street, 10 or 12 feet from Second."

He also testified that no complaint had been made by his passenger concerning excessive speed; that he had been driving for about fourteen years and that it was his invariable custom to bring his cab to a full stop before entering an intersection marked by "blind" corners, of which there are many in the city of New Orleans, and that he did not depart from that practice in this instance, having stopped at every "blind" corner on this particular occasion; that he did not see the Chevrolet before it struck him, though he looked in the direction from which it came just before entering the intersection. However, he says, he did not look a second time because he saw nothing the first time, and thereafter he kept his eyes "straight ahead." The impact occurred, according to this witness, after he had completed the crossing of the intersection of Second street, at a point about ten feet below the curb line of Second street, nearest Canal street.

Fred Gruner, the bystander, stated that he was pushing a wheelbarrow down Carondelet street in the direction in which the taxicab was proceeding and that, as he had almost completed the crossing of Second street, he heard the squeaking brakes of the taxicab as it came to a stop before entering the intersection, heard the driver shift his gear, and saw the cab clear the intersection, when, his attention being attracted by the roaring of an automobile motor, he looked out Second street and saw a coupe about a half block, afterwards measured and found to be 130 feet, away, moving as rapidly as the wheels would turn, approaching from the direction of the lake toward the river; that he barely had time to escape contact with the speeding car by jumping suddenly to the side; that at the time of the collision the taxicab was moving at a rate of speed of from six to eight miles an hour.

During the trial of the case, at the invitation of defendant's counsel, the trial judge, the witnesses, and counsel proceeded to the scene of the accident, where the location of the colliding vehicles, when seen by the witnesses before and after the accident, was pointed out and the distances deemed of importance were measured.

The position of the defendant is that its driver was free from fault or responsibility for the accident because the Yellow cab first entered the intersection after having cautiously stopped and looked and that it had completed the crossing before colliding with the Chevrolet, the driver of which should have waited and yielded the right of way, under the familiar principle of law to the effect that one who first enters an intersection is entitled to proceed. Item Co., Ltd., v. Checker Cab Co., 9 La. App. 397, 120 So. 509; Dietrich & Wiltz v. H. T. Cottam & Co., 9 La. App. 740, 120 So. 262; Marshall v. Freeman, 10 La. App. 12, 120 So. 414; Middleton v. Jordan, 10 La. App. 189, 120 So. 668; Lepinay v. Vitrano, 12 La. App. 475, 125 So. 304; Cooke v. Seegers, 17 La. App. 313, 136 So. 216; Hamilton v. Lee (La. App.) 144 So. 249.

The contention of the plaintiff is that the negligence of the taxicab driver is manifest by his own account of the accident to the effect that he did not see the Chevrolet before the impact because, if he had kept a proper lookout, he could not have failed to see it, and that one must be held to have seen what he should have seen. Pugh v. Henritzy (La. App.) 151 So. 668, 669; Gibbens v. New Orleans Terminal Co., 159 La. 347, 105 So. 367; Holderith v. Zilbermann (La. App.) 151 So. 670.

In a case very similar to the instant one, Thibodeaux v. Star Checker Cab Co., 143 So. 101, 103, this court held the driver of a taxicab negligent for failure to keep a proper lookout. In that case we said:

"The witnesses for the taxicab company testified that the taxicab came to a full stop at the intersection, and that Mr. Elwell's car approached the intersection at a rapid rate of speed without slowing down and ran into the taxicab, striking the right rear side of it, due to the fact that the taxicab driver swerved sharply to his left in an effort to avoid the collision.

"We believe that the driver of the taxicab was at fault because he admits that he did not see Mr. Elwell's car approaching until he was in the intersection. If he had been keeping a proper lookout and exercising ordinary care, there is no reason why he should not have seen the Whippet sedan as it approached the intersection. If the driver's testimony and the other witnesses' testimony for the

company is accepted as being true, the taxicab driver was in a position of safety, and ventured out in front of the on-coming Whippet sedan, which they say was being driven at a rapid rate of speed. Such conduct on the part of the driver was negligence. So that, under either or both versions of how the accident occurred, the taxicab driver was at fault."

It is true that in this case the presence of the parked car on Second street may have interfered with the vision of the taxicab driver, but, if the Chevrolet was running as fast as Mr. Gruner, defendant's witness, says it was, or anywhere near it, and the roar of its engine sufficient to attract the attention of a pedestrian 130 feet distant, we cannot escape the conclusion that it must have been audible to the taxicab driver, even though it was, at some time before the impact and after the cab entered the intersection, invisible because of the parked car. It should, however, have been visible to Cuccia, the driver of the cab, when far enough away from the intersection to permit him to stop the taxicab, particularly since he was moving so slowly. Cuccia made a most unfavorable impression upon the learned judge below, who, in his reasons for judgment, declares:

"I believe that the driver of the taxicab was guilty of negligence. Even if I accept his testimony as true, which is exceedingly difficult to do, it shows that he was negligent. He claims to have brought his taxicab to a full stop before crossing the intersection and he states that he looked out Second Street in the direction of the lake. He says that he saw nothing. The Chevrolet car was certainly there, and he should have seen it.

"I visited the scene of the accident in company with the lawyers in the case. The uptown lake corner is what is termed a 'blind' corner, because there is a building which extends to the property line on both Second and Carondelet Streets. Once the property line on Second Street is reached, a man in an automobile which has been stopped on Carondelet Street can see for a full city block away, —that is, out Second Street. Hence, there is no excuse for the driver of the taxicab in failing to have seen what he should have seen. However, I do not place much confidence in this driver's testimony, because he blandly and boldly stated that it was his custom to bring his car to a full stop at every blind corner. Such a statement is manifestly untrue. On the other hand, the plaintiff appears to be an educated and cultured gentleman, and in my opinion described more accurately than either of the other two witnesses just what occurred."

■ Counsel directs our attention to the fact that Gruner was the only disinterested eyewitness. We recognize that he was entirely disinterested, and, we feel sure, quite sincere in his description of the accident. However, his opportunity for accurate observation must have been affected by the imminent peril in which he believed himself to have been placed by the reckless driving of the Chevrolet car. But in so far as his evidence is material, it is not inconsistent with a finding of fault in the operation of the taxicab. We are convinced that Cuccia, in failing to observe the approaching Chevrolet car under circumstances which would have revealed it to a vigilant and careful driver, was guilty of negligence.

■ The judge, a quo, allowed $1,000 for physical injuries and $500 for loss of earnings.

The injuries suffered by plaintiff are described by Dr. Bradburn as "a fracture of the seventh rib on the left side, in the mid-axillary line, and multiple contusions." We believe that the allowance on this item of damages, $1,000, is correct.

■ Plaintiff is a naval architect. He testified that his income was between $6,000 and $7,000 per annum. The judge, a quo, found that he was incapacitated as a result of his injuries for one month and allowed one-twelfth of $6,000, or $500.

In the case of Crozat v. Toye Bros. Yellow Cab Co., 145 So. 60, 61, we allowed $2,211.67 as loss of earnings sustained by Dr. Crozat, the plaintiff in that case, as a result of an accident for which we found the defendant liable. In our opinion in that case we said that the rule with respect to the recovery of damages for loss of earnings depended for its application upon the degree of certainty of proof of loss:

" * * * The determining factor in such cases is the certainty with which the loss has been established. For example, when it has been definitely proven that a decrease in earnings has resulted from inability to exercise personal effort or skill towards the production of the income and the amount of such loss has been established with reasonable certainty, an award should be made."

In that case it was proven by convincing evidence that the loss claimed, to the extent allowed, had been sustained; but here the evidence in this regard is unsatisfactory.

The loss of income is estimated in round numbers and no detailed figures given. We are of opinion that the rule should not be extended beyond the scope indicated in our opinion in the Crozat Case, and, consequently, are disinclined to allow this item.

For the reasons assigned the judgment appealed from is amended by reducing the sum awarded plaintiff from $1,500 to the sum of $1,000, and, as thus amended, the judgment is affirmed; the costs of lower court to be paid by defendant-appellant and of this court by plaintiff-appellee.

Amended and affirmed.