# SINE v. SALT LAKE TRANSP. CO. et al.

No. 6523.   Decided April 19, 1944.   (147 P. 2d 875.)

See 13 C. J. S. Carriers, sec. 677; Right of way at street or highway intersections as dependent upon, or independent of, care or negligence, notes, 89 A. L. R. 838; 136 A. L. R. 1497. See, also, 5 Am. Jur. 664.

*W. D. Beatie*, of Salt Lake City, for appellant.

*Ingebretsen, Ray, Rawlins & Christensen*, of Salt Lake City, for respondents.

BAKER, District Judge.

This action arose out of a collision between a taxicab of the defendant, Salt Lake Transportation Company, a corporation, and an automobile driven by one Charles W. Hall, which occurred on the 11th day of July, 1941, at the intersection of Third West Street and West 6th South Street in Salt Lake City. At the time of the collision the taxicab was being operated by the defendant Orville V. Butcher, who was an agent and servant of the defendant corporation and then and there acting within the scope and course of his employment. It is also undisputed that at the time of the accident the plaintiff was being transported by the defendants as a passenger for hire.

The taxicab so operated by said Butcher approached said intersection from the east; the automobile driven by said Hall was proceeding in a northerly direction along said 3rd West Street, and approached and entered said intersection from the south. The plaintiff by her amended complaint alleges that at the time of said collision she was an occupant of the rear seat of said taxicab, and that as a result of said collision she was thrown about the inside of said taxicab and thereby suffered certain injuries to her person for which she claims damages. The plaintiff further alleges that said collision and her resulting injuries were caused by the negligence of the defendant Butcher in the operation of said cab.

The defendants by their answer deny all allegations of negligence, and that the plaintiff suffered any damage by reason of any want of care on their part.

On the issues so formed the case came on for trial before the late Judge P. C. Evans of the Third District Court. Judge Evans heard the evidence and the matter was argued and submitted to him for decision, a jury having been waived. Shortly thereafter Judge Evans died without rendering a decision in the case. The case was then re-set and assigned to the Hon. M. J. Bronson, another judge of the same court, for trial. Thereupon the parties stipulated that the cause should be submitted to Judge Bronson upon the record made at the trial before Judge Evans, and upon arguments to be made by counsel for the parties, if Judge Bronson should so desire. The stipulation was confirmed by the court, and accordingly the court, after reading the transcript of the evidence, heard arguments by counsel for the parties. The court then took the matter under advisement, and thereafter made and filed its findings of fact and conclusions of law, upon which judgment of "no cause of action" for the defendants was duly entered on the 30th day of March, 1942. It is from that judgment that the plaintiff herein has appealed.

The plaintiff assigns as error those findings of the trial court which are to the effect that defendants were guilty

of no negligence, and that any injuries suffered by appellant were caused solely and exclusively by the negligence of the aforementioned Charles W. Hall, driver of the other automobile involved in the collision. It is the contention of appellant that those findings of fact, together with the conclusions of law and judgment which were drawn therefrom are contrary to law, and are not sustained by, and are contrary to the weight of the evidence.

It appears from the record before us that Third West Street runs north and south, and that Sixth South Street runs east and west, and that the place where they intersect in Salt Lake City was the scene of the accident of which appellant complained. The paved portion of Third West Street, from curb to curb, north of Sixth South Street is 93 feet, and the paved portion of Third West Street, from curb to curb, south of Sixth South Street is 61 feet. The width of Sixth South Street, from curb to curb, is 61 feet. Two sets of standard-gauge railroad tracks run along the center of Third West Street in a north and south direction and traverse said intersection. It is about 20 feet from the east curb-line of Third West Street where it intersects the south curb-line of Sixth South Street to the easternmost rail of the railroad tracks. From a point on Sixth South Street 50 feet east of the east intersection line the view south on Third West Street was unobstructed for a distance of 200 feet.

On the day of the accident the taxicab operated by the defendant Butcher as agent and servant of the defendant Salt Lake Transportation Company was carrying the plaintiff as a passenger for hire in the rear seat of said cab and proceeding westerly on said Sixth South Street as it approaches the intersection of that street with said Third West Street. At the same time the automobile operated by said Charles W. Hall was proceeding northerly on said Third West Street and approaching said intersection from the south. At a point within the intersection the automobile driven by Hall ran into the taxicab, striking the taxicab at a point in the region of the left rear door and the front

part of the left rear fender. The impact caused the injuries of which the plaintiff complains.

The specific acts of negligence on the part of the defendants alleged by the plaintiff in her amended complaint are that the defendant Butcher:

(a) Operated said cab along and upon Sixth South Street in a westerly direction and south of the center of said street;

(b) Operated said cab at an excessive rate of speed, to wit, in excess of 35 miles per hour;

(c) Failed to keep a careful or any lookout for persons and vehicles along and upon said highway; and

(d) Failed to keep said cab under control.

Respondent asserts that an examination of the record before us discloses either that there is no proof of the charges of negligence made by the plaintiff in her complaint, or that the proof with respect to such charges is in substantial conflict, which conflict was resolved by the trial court in favor of the defendants. Appellant contends, on the other hand, that it appears from the record that the defendants were negligent as a matter of law, and that such negligence proximately contributed to the injuries sustained by appellant.

This is a case at law. It therefore follows that this appeal is upon questions of law alone. That being true the function of this court is not to pass upon the weight of the evidence, nor to determine conflicts therein, but to examine it solely for the purposes of determining whether or not the judgment finds substantial support in the evidence. In so examining the evidence all reasonable presumptions are in favor of the trial court's findings and judgment, and the evidence must be considered in the light most favorable to them. If the findings and judgment are substantially supported by the evidence, then the court may not disturb them. When, however, the evidence is viewed in the light most favorable to the judgment of the trial court, the conclusion to be drawn therefrom is a matter of law, and the question which confronts this court is whether or not the

court on the basis of such facts was correct in its conclusions of law. Accordingly the fundamental issue presented by this appeal is this: Was the defendant Orville W. Butcher guilty, as a matter of law, of negligence which proximately contributed to the injuries of which appellant complains?

To answer the foregoing question we have examined the evidence with respect to each of the specific allegations of negligence as set out above. With regard to allegations (a), (b) and (d), that defendant Butcher operated the taxicab on the wrong side of Sixth South Street, that he operated it at an excessive rate of speed, and without having it under control, we find the evidence in substantial conflict. Those conflicts were resolved by the trial court in favor of respondents, and we may not disturb its findings.

The evidence with regard to plaintiff's allegation (c)—failure by defendant Butcher to keep a proper lookout—presents a situation wherein the conflict is not so clear. True, the evidence is in conflict as to who entered the intersection first, and we must assume, since the trial court so found, that Butcher was the first to enter. In that connection it will be noted there was in effect at the time of the accident, Section 57-7-136, Utah Code Annotated 1943, which is in part as follows:

"(a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

It follows that if within the purview of the foregoing statute, the fact that Butcher entered the intersection first is determinative of the issues here involved, the judgment of the lower court should be affirmed. We have formerly held, however, notably in *Bullock* v. *Luke,* 98 Utah 501, 98 P. 2d 350, that the rights of the possessor of the right of way under such a statute are only relative, and that one is not relieved of the duty of using due care

simply because he is the apparent possessor of the right-of-way. See also Berry on Automobiles, 6th Ed., Sec. 1045. The problem before us, therefore, is not simply one of determining who entered the intersection first, but of determining under all of the circumstances whether as a matter of law negligence on the part of the driver of the cab proximately contributed to the injuries of which the plaintiff complains. If it did, then the defendants would be liable, even though such driver was the apparent possessor of the right of way, and even though Hall, the driver of the other car, was likewise guilty of concurrent negligence, which contributed as a proximate cause of the injury. *Ramsdell* v. *Frederick*, 132 Or. 161, 285 P. 219; *Hughes* v. *Pittsburg Transp. Co.*, 300 Pa. 55, 56, 150 A. 153.

As was stated in *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 16 S. E. 2d 625, 628:

"The test of the plaintiff's right to recover was whether the defendant was guilty of such primary or concurring negligence as brought about the accident. It was not whether Perkins was also guilty of negligence. Conceding that Perkins was guilty of gross negligence, that did not relieve the defendant of its own negligence, if such negligence was a proximate cause of the accident."

Can it be said that on the state of facts presented in this case respondents may be absolved from all negligence? In determining that question the fact is to be noted in this case that the relationship of carrier and passenger existed between plaintiff and defendants at the time of the accident. This court has recognized the high degree of care which a carrier owes to its passengers to protect the latter against accidents in *Christensen* v. *Oregon S. L. R. Co.*, 35 Utah 137, 99 P. 676, 678, 20 L. R. A., N. S., 255. In the course of its opinion in that case this court remarked:

"The law imposes the duty upon the carrier of exercising the utmost care to protect his passengers against accidents; and, in case an accident occurs, the inference arises that the carrier has not exercised that high degree of care which the law imposes."

The rule enunciated in the foregoing quotation, with some variation of expression, has been widely accepted by the courts of this country. 10 Am. Jur., Carriers, Sec. 1245, et seq.; *Henson* v. *Fidelity & Columbia Trust Co.*, 6 Cir., 68 F. 2d 144; *S. S. Kresge Co.* v. *McCallion*, 8 Cir., 58 F. 2d 931; *Continental Life Ins. Co.* v. *Newman*, 23 Ala. App. 203, 123 So. 92; *Arkansas Power & Light Co.* v. *Mart*, 188 Ark. 202, 65 S. W. 2d 39; *McGraw* v. *Ayers*, 248 Ky. 166, 58 S. W. 2d 378.

That rule of care applies not only to railroads, buses, etc., but to the operation of taxicabs as well. *Bezera* v. *Associated Oil Co.*, 117 Cal. App. 139, 3 P. 2d 622; *Friede* v. *Toye Bros. Yellow Cab Co.*, La. App., 156 So. 48; *Shelton Taxi Co.* v. *Bowling*, 244 Ky. 817, 51 S. W. 2d 468, 470. In the last case above cited the Kentucky court remarked:

> "In view of this rule (that carriers must exercise the highest degree of care) appellee had the right to assume that appellant's driver, whatever may have been the situation, would exercise the care necessary to transport him safely."

Counsel for defendants substantially admit that the operator of a taxicab service is a public carrier and as such is required to exercise a high degree of care, but they call attention to the cognate principle that, even so, the carrier is not an insurer of its passengers' safety, and that to become liable for injury to a passenger it must be established that it was guilty of some negligence which was a proximate cause of the injury. We agree with that, and accordingly will proceed to an examination of appellant's assertion that, even viewing the evidence most favorably to respondent, the evidence discloses negligence as a matter of law on the part of the driver, Butcher.

Viewing the facts connected with the collision as favorably to respondents as we may, what are they? Butcher was proceeding westerly on the north half of Sixth South Street at a speed as he approached and entered the intersection with Third West Street of 20 miles per hour. The traffic at that intersection was not controlled by any stop sign,

semaphore, or other traffic director. It was late afternoon on a clear summer day, and Butcher's vision from a point 50 feet east of the east intersection line was clear and unobstructed for a distance of 200 feet south of Sixth South Street. He had already entered the intersection when he first observed the Hall car coming from the south. The Hall car was then about 50 feet from him, and Hall was then travelling, as Butcher himself then observed and concluded, at a speed of about 40 miles per hour. Butcher himself testified that it would then have done him no good to put on his brakes. He didn't apply them. He just assumed that Hall would reduce his speed as he entered the intersection, and he then, on that assumption, proceeded through it. He didn't see the Hall car again until just at the moment of impact. According to Butcher's testimony his cab at the moment of impact was at a point with its front wheels between the rails of the easternmost set of railway tracks which traversed the intersection, and slightly north of the division line between the north and south portion of Sixth South Street.

One of the fundamental duties which defendant Butcher owed to his passenger, the plaintiff, was to keep a vigilant lookout for other vehicles along the highway upon which he was travelling. As he approached the intersection where the accident occurred he was bound to anticipate the presence of other vehicles that might be crossing his line of travel, and to govern his conduct accordingly. 42 C. J. 91, *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, R. I. 193 A. 622; *Richards* v. *Palace Laundry Co.*, 55 Utah 409, 186 P. 439. Among other things it was his duty as he approached the intersection to look in both directions along the intersecting street, and not merely in the direction from which vehicles having the right of way over him might be approaching, 42 C. J. 963. The supreme rule of the road as to motorists at street intersections in cities is the rule of mutual forbearance. *Ward* v. *Clark*, 232 N. Y. 195, 133 N. E. 443. The foregoing rules were particularly applicable to Butcher because

he was the driver of a cab for hire. Butcher could not, moreover, insist with impunity upon his right of way in the face of an apparent danger arising from the negligence of another approaching from the unfavored direction. If in such case he saw, or in the exercise of due care should have seen, the Hall car approaching at an excessive rate of speed, or otherwise indicating that the right of way was probably not going to be yielded to him, he should have slowed down, or stopped or otherwise have taken appropriate measures to avert a collision. Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed. vol. I, p. 494, § 682; *Hogan* v. *Miller*, 156 Va. 166, 157 S. E. 540; *Shelton Taxi Co.* v. *Bowling*, 244 Ky. 817, 51 S. W. 2d 468; *Petri* v. *Pittsburg Rys. Co.*, 328 Pa. 396, 195 A. 107.

Actual possession of the right of way, as opposed to a physical position of two vehicles with reference to the intersection which might under the statute confer it, presupposes that motorists entering the intersection have exercised due care, including that of keeping a proper lookout. In the case of a taxi driver that means that he must keep such a lookout as will conduce to the safety of his passenger. The operator of a taxicab may not place his passenger in a place of imminent peril through his own failure to keep the lookout which the law requires of him, and then after a collision has occurred, absolve himself of negligence by asserting that, after all, he had the right of way. Neither may he absolve himself by asserting that the collision was due solely to the fault of the other driver, if that fault might have been discovered and its consequpence avoided by the exercise of due care on his part. *Hogan* v. *Miller*, 156 Va. 166, 157 S. E. 540.

As we have already indicated, Butcher was required not only to look for cars approaching or entering the intersection, but to look effectively, and was charged with knowledge of all that a prudent and vigilant operator would have seen had he looked. 42 C. J. 911; *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, supra; Huddy Cyc. of Automobile Law, 9th Ed., Vol. 3-4, Sec. 48.

Now, what do the facts in the instant case disclose as to the observance by Butcher of his duty for the protection of his passenger to keep a lookout as he approached and entered the intersection here involved? The facts as we view them have been recounted above. So far as the lookout kept by Butcher is concerned, they reveal *that he did not look at all until he had entered the intersection* and this despite the fact that his view south on Third West Street was clear and unobstructed for a distance of 200 feet from a point 50 feet east of the intersection of Sixth South Street, within which limits Hall was at all times visible to Butcher had he looked. At the time that he did look the Hall car was about 50 feet away and coming north toward him at the rate of about 40 miles per hour. Butcher could then, by his own testimony, do nothing. He did nothing, and the collision resulted. Certainly, in light of the fact that Butcher's view was unobstructed, it cannot reasonably be said that his observation of the Hall car was at the first opportunity, nor at a point which conduced to the protection of his passenger. *Bullock* v. *Luke,* supra. At the time he first saw the Hall car approaching he had by his negligence placed himself and his passenger in a position of peril from which he did not, and probably could not, extricate himself by the exercise of any degree of care. Therein Butcher was guilty of negligence.

It is to be observed that we are here confronted with a situation where there was an entire failure of the operator of the cab to keep the look-out that was required of him. By his utter failure to look until a time when the accident had become unavoidable, Butcher deprived himself of the opportunity to do anything which might have avoided the collision. Had he looked sooner and in response to what such observation revealed attempted in some manner to have avoided a collision then, perhaps, a question of fact would arise as to whether not he had exercised that degree of care demanded by the circumstances and his relationship to the plaintiff. As the facts present themselves, however, viewed in a light favorable to the defendants, Butcher failed to look

when he should. He kept no look-out such as would be effective for the due protection of his passenger. In so doing he failed to perform one of the essential duties he owed to his passenger, and therein was guilty of negligence as a matter of law. *Bullock* v. *Luke*, supra; *Block* v. *Peterson*, 284 Mich. 88, 278 N. W. 774; *Jacobsen* v. *O'Dette*, 42 R. I. 447, 108 A. 653; *Thibodeaux* v. *Star Checker Cab Co.*, La. App., 143 So. 101. See also cases cited above relating to duty of taxicab drivers at street intersections.

In failing to keep a proper lookout respondents did not exercise that degree of care which is required of a common carrier of passengers for hire and therein were negligent. It follows that the judgment is reversed and the case remanded to the District Court for a new trial. Costs to appellant.

WOLFE, Chief Justice (concurring).

I concur in the opinion of Judge BAKER and in the elucidating remarks of Mr. Justice McDONOUGH. Again, as in my concurring opinion in *Bullock* v. *Luke*, 98 Utah 501, 98 P. 2d 350, I direct attention to the fine line on the one hand between requiring a driver to evercise the requisite caution towards others in an intersection under all the circumstances then existing as part of his *own* duty and on the other hand, requiring him to avoid the effect of the other's negligence when he has performed the duty himself of exercising due care. I, of course include within the content of the duty to use due care that duty which arises when he could or should have appreciated that the other was negligently driving and that such negligence might contribute to an accident. We must not maneuver the law into such a position that we put on a driver using due care the duty to avoid the effect of another's negligence. That would make each driver an insurer against the effect of the other's actions. In this case the distinction is well preserved. Butcher did not exercise due care in relation to his fare. He failed to look when looking would have been effective. Had

he looked at a point 50 feet back of the intersection or at least so far back of it as to permit him to conduct his driving in relation to the exigencies which might arise out of the conduct of Hall, he might have slowed to a speed below 20 miles an hour. In my concurring opinion in the case of *Bullock* v. *Luke,* supra, I called attention to the relationship between the speed element and the distance behind the intersection where one should begin to take account of the intersection situation. Certainly where one is slowly approaching the intersection and intends to maintain a slow speed he retains all the elements of control even if he looks at a later time than would be required if he were approaching at a more rapid speed and intended to maintain it. This relationship between the observation and speed elements of driving, of course, attends a driver throughout his trip. We can say as a matter of law as we did in the Bullock case that entering an intersection without timely observation is negligence. But can we say as a matter of law that such negligence proximately caused the accident? In order to do that we must be able to say that had Butcher looked sooner the degree of care toward his fare with which he was charged, be it ordinary or extraordinary, would in law demand that he act differently than he did in this case. While I am not without doubt in the matter I think we can say as a matter of law that had he sized things up at a moment or two earier he would, in view of his speed and the speed of Hall, have had to make different accommodations in order to discharge the duty he owed his fare. The failure to make such accommodations contributed to the accident and the failure to sooner look resulted in the failure to make the accommodations. Thus the chain between failure to look and the accident is established as one of proximate cause. I rather think that had Butcher been driving an empty cab and had sued Hall or been sued by Hall the question of whether such negligence proximately caused or contributed to the accident would have been one for the jury. Even though he had not timely looked, if he under the law had the right of way, the question still would remain as to

whether he had exercised due care in view of the principle that in intersections due care involves taking into account relative duties and rights. I do not think in that case we could have said as a matter of law that in respect to Hall he was negligent. In the Bullock case we said so but I am inclined to think that we went a little too far in that case. I have doubt as to whether if a fare had not been involved in this case we could have distinguished the Bullock case from it and if not whether we would not have had to overrule the Bullock case. But this case is one involving the defendant's duty to a fare carried in a public conveyance. I concur.

LARSON, Justice (concurring).

I concur. However, in view of some statements made in the arguments of counsel regarding the case of *Bullock* v. *Luke*, 98 Utah 501, 98 P. 2d 350, which suggests danger that that case may be extended beyond its proper scope so as to make any collision at an intersection negligence on both sides, I add a few comments which I hope may help in applying the rule announced in this case and that one. What then is the negligence that must be inferred or imputed to Butcher to reverse the judgment? As stated by Judge BAKER it must be either: (1) That he did not look to the left and see the Hall car approaching until he (Butcher) had entered the intersection; (2) that he did not apply his brakes after he saw the Hall car. But how can this latter one be negligence in view of the record that it would have done no good to apply the brakes at that time? Also, it would probably have been negligence to stop his car right in the path of the Hall car hurtling down upon him. Reason and safety suggest he then should attempt to get out of the way before the Hall car could strike him. He almost succeeded; had he speeded up he probably would have made it. So any negligence must be predicated upon point (1).

It is the duty of every driver approaching an intersection to anticipate that other persons may be in, or about to enter,

the same intersection, and to govern his conduct accordingly. *State* v. *Adamson*, 101 Utah 534, 125 P. 2d 429; *Richards* v. *Palace Laundry Co.*, 55 Utah 409, 186 P. 439. And since he must anticipate that others may be approaching or entering the intersection it becomes his duty to look to both sides and ascertain that it is reasonably safe for him to enter and pass through the intersection, and he cannot be heard to say that he did not see that which he should have seen had he looked. His failure to see it only emphasizes the fact that he was negligent in not looking, *Bullock* v. *Luke,* supra; and failure to see it indicates a lack of care sufficient to indicate negligence. *State* v. *Adamson*, supra. I do not think that a street intersection, in the absence of special reasons therefor can be termed a place of special hazard, but because of the nature of the traffic thereon, it is a place that suggests the need of more care and caution. If the principle laid down in the Bullock case be carried to its limits, as I think the prevailing opinion intimates it should be, it would create a situation where there would be traffic jams at many intersections, because every driver would feel under the necessity of not going through the intersection if there was another car in sight. I conceive the rule of the Bullock case to be this: A driver approaching an intersection must anticipate that there may be other cars approaching the intersection and before entering the intersection must look both ways and note any vehicles near or approaching the intersection. If the position and speed of the other user of the highway is such that a reasonably prudent man would think he could cross in safety he may proceed through the intersection and will not be guilty of negligence. But if the conditions are such that a reasonably prudent driver would be apprehensive of danger in crossing through the intersection, then to do so would be negligence. This without regard to who has the right-of-way unless the intersection is one controlled by semaphore lights or other definite means of control of traffic at the intersection. And one may not rely upon the right-of-way or assume the other driver will stop unless the circum-

stances and behavior of the other driver are such that a reasonably prudent man would conclude that the other driver was going to stop and yield him the right-of-way.

Returning now to the facts in the instant case, we have the following situation. Butcher, driving west, approached the intersection—where there was no traffic director, semaphore, or stop sign—at 20 miles per hour. Hall, driving the other car was coming north toward the intersection at 40 miles per hour. When Butcher was 50 feet from the intersection, he had an unobstructed view of the intersecting road to the south of him for 200 feet, had he looked in that direction. At that time, Hall would have been approximately 100 feet from the intersection—well within the field of vision—and traveling about 60 feet per second, or less than two seconds time from the intersection. Butcher was going about 30 feet per second, or less than two seconds time from the intersection. Had Butcher looked, as it was his duty to do, he would have seen this very apparent danger. Since the record is silent as to Hall's behavior as he approached the intersection but he did not stop or slow down, we must assume that had Butcher looked and seen Hall coming, there would have been nothing in Hall's conduct to justify Butcher in concluding that Hall would stop and yield him the right-of-way. As a result, that danger which would have been apparent had Butcher looked at the road and traffic to his left before entering the intersection, became a reality, and the cars collided resulting in injuries to the plaintiff. We need not commit ourselves as to whether the conduct of Butcher was negligence of such character as Hall could set up, either as a cause of action against Butcher or as a defense to an action by Butcher against him. Such situation is not before us. This is an action against a common carrier for negligence toward a paid fare, a passenger. As stated by Judge BAKER, the obligation of care to the paid passenger is to exercise the utmost degree of care to prevent injuries to her. The conclusion is inescapable that respondent did not exercise that

degree of care required of a common carrier of passengers for hire. I therefore concur in reversing the judgment.

McDONOUGH, Justice (concurring).

I concur. The defendant's own testimony reveals that he did not look to the south along the intersecting highway before reaching a point where observation was ineffectual. The situation, therefore, is the same as though he had driven heedlessly through the intersection without looking at all. He drove his fare into a position of danger without having placed himself in a position to determine whether he, under the statute defining the right of way, had the right to proceed; he negligently failed to inform himself of the hazard presently encountered so as to exercise that care toward his passenger which the law enjoins.

Such situation differs from one where a driver, having performed the duty of observing, exercises a reasonable judgment as to the right of precedence and, absent evidence that his right was not going to be respected by the driver of another car, proceeds. Under such a state of facts, it is usually for the trier of the fact to evaluate such driver's conduct; although, in some circumstances such driver would, in my opinion, be free from negligence as a matter of law.

I appreciate that under the facts of the instant case the difficult question is whether defendant's conduct can be said *as a matter of law* to be a contributing cause of plaintiff's injuries. If it cannot, then though a carrier's servant drives into an intersection at a reasonable rate of speed, but utterly oblivious of the traffic hazards, a jury may adjudge him free of actionable fault, if it turn out that he had the statutory right of way.

One need not attempt to define the difference—assuming any exists abstractly—betwen due care and extraordinary care. Suffice, here, to say that the driver of the cab owed to the plaintiff the duty of being alert and watchful at all times and of acting prudently on observing a situation which reasonably appeared to present a hazard to the safety of his

fare. That he did not exercise the vigilance which was a prerequisite to a prudent choice between courses of conduct open to him, he himself admitted. That he might have avoided the accident by a slight acceleration of speed or by slowing down, after becoming cognizant of the approach of the other car, is demonstrated by the physical facts. Had he made such choice under the exigency confronting him, his choice of other than the most safe of the courses open to him, would not be negligence in law. But here his failure to observe, evaluate and act should in my opinion, be held to be the cause of his vehicle being placed in the path of the other car.

PRATT, J., on leave of absence.

MOFFAT, J., participated in the hearing but died before publication of the opinion.