# Richmond.

JULIUS HOGAN v. SUSANNE B. MILLER.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Caskie, Frost & Coleman,* for the plaintiff in error.

*Barksdale & Abbot* and *Woods, Chitwood, Coxe & Rogers,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This action by notice of motion was brought by Mrs. Susanne B. Miller against Julius Hogan to recover damages for injuries sustained by her on the 9th day of December, 1928. There was a trial by a jury which resulted in a verdict for the plaintiff; the court entered judgment thereon, and defendant is here complaining.

The controversy arises out of these facts: Defendant Hogan operated a taxi-cab or "car for hire" in the city of Lynchburg. On the day of the accident, plaintiff, a trained nurse, en route to Roanoke, Virginia, arrived in Lynchburg on a Southern Railway train, and ascertained that in order to complete the journey to Roanoke, she would have to transfer across the city and board a train of the Norfolk and Western Railway Company. She selected the "car for hire" of defendant, which was being operated by one L. M. Webber, and directed him to transport her to the Union Station. Webber knew that the train for Roanoke was scheduled to depart seven minutes earlier than the scheduled arrival of the Southern train, but that it was customary for the Norfolk and Western train to wait a limited time to take on passengers arriving on the Southern train. During the progress of the journey, Webber, driving along Eighth street, arrived at the intersection of Clay and Eighth streets where he was struck by or collided with an automobile which was proceeding along Clay street, being driven by one A. T. Lanham. As a result of the collision plaintiff sustained severe injuries.

Webber claimed that he had the right of way at the intersection; that he exercised due caution in approaching the intersection; and that the accident was caused solely by Lanham's negligence in failing to accord to him the right of way.

The basis of plaintiff's claim is that Webber was proceeding at an excessive rate of speed under the circumstances; that he failed to keep a proper lookout for Lanham's car; that after

the discovery of Lanham's car he failed to turn to the right in order to avert a collision; that he negligently insisted upon maintaining the right of way, in spite of the fact that to do so would cause an accident.

█ .The first error assigned is that the court erred in overruling defendant's motion that A. T. Lanham also be made a party defendant to plaintiff's action, pursuant to the provisions of section 6102 of the Code. That section is as follows:

"Effect of non-joinder or misjoinder.—No action or suit shall abate or be defeated by the non-joinder or misjoinder of parties, plaintiff or defendant, but whenever such non-joinder or misjoinder shall be made to appear by affidavit or otherwise, new parties may be added and parties misjoined may be dropped by order of the court at any stage of the cause as the ends of justice may require; but such new party shall not be added unless it shall be made to appear that he is a resident of this State and the place of such residence be stated with convenient certainty, nor shall he be added if it shall appear that by reason of chapter two hundred and thirty-two or chapter two hundred and thirty-eight, the action could not be maintained against him."

In support of his motion that plaintiff be required to amend her notice of motion to include Lanham as a co-defendant, defendant filed an affidavit reading, in part, as follows:

"That the accident from which the injury resulted to Mrs. Susanne B. Miller was the result of the negligence of the said A. T. Lanham, who at the time of the accident was driving an automobile westward on Clay street down grade from Seventh to Eighth street in a northerly direction. The automobile of defendant, Julius Hogan, was thus approaching from the right of the automobile of the said Lanham and under the ordinance of the city of Lynchburg was thus entitled to the right of way. In addition, the automobile of the said Julius Hogan entered the intersection prior to the time that the automobile of the said Lanham reached the said intersection. The automobile

of the said Hogan reached or crossed the center of the said intersection when the impact between the two automobiles occurred knocking the automobile of the said Hogan over against the northeasterly corner of said intersection.

"The said Hogan further alleges and charges that the automobile of the said Lanham was approaching said intersection at an unlawful rate of speed without the exercise of care and caution required of him on approaching said intersection, at which his view from the right was obstructed by a building built up to the street lines on Clay and Eighth streets.

"The defendant Hogan charges and alleges that the driver of his car approached said intersection and entered same in a lawful and proper manner without negligence of any kind and that the accident was proximately caused wholly by the negligence of the said A. T. Lanham, and further charges that if there was any negligence whatsoever on the part of the driver of the car of the said Hogan, the negligence of said Lanham as set out above was the principal negligence involved and there was at most mere concurring, slight negligence, if any, on the part of the driver of the car of said Hogan."

██ ██ By Acts of Assembly, 1893-4, page 489, c. 421, section 3261 of the Code of 1887 (which provided for the filing of a plea in abatement when it appeared to the court there was a non-joinder of necessary parties defendant), was amended. By that act it was provided that whenever it was made to appear, by the pleading or otherwise, that in any suit or action there was a misjoinder of parties, plaintiff or defendant, the court was empowered to abate the action as to any party improperly joined, and to proceed with the suit or action. The act of 1893-94 was amended by Acts of 1895-96 (chapter 423), but the provision relating to mis-joinder of parties was not affected. In the revision of the Code in 1919 the revisors inserted section 6102 as it now reads. The purpose of that section was to extend the power of the court by further providing that in any suit or action when it appeared

there was a non-joinder of necessary parties, then the court, in the exercise of its discretion, could compel the joinder of such parties. Defendant contends that the change was wrought for the specific purpose of ending in one suit or action the rights of a plaintiff and the liabilities of those who otherwise might be defendants in future litigation. No such intention of the legislature is indicated by the language employed. The purpose of the statute was to provide a simple method for joining as co-defendant a necessary party. It is purely a procedural statute and in no wise changes the nature of *tort* liability. The effect of the statute as to non-joinder is that the omission of a defendant necessary for the maintenance of the plaintiff's action can be corrected by the method provided.

Numerous cases from other States have been cited by defendant to sustain his contention. An examination of these cases reveals that the decisions are based upon statutes (in Code States) providing primarily for the ending of litigation in one suit or action. Virginia has not adopted the Code practice, hence the authorities cited shed no light upon the question in issue. The settled rule in this State, which in our opinion has not been disturbed by the enactment of section 6102, is well stated in *Staunton Mut. Telephone Company* v. *Buchanan*, 108 Va. 810, 62 S. E. 928, 929, as follows: "Co-trespassers are jointly and severally liable, and the party injured may sue all of them jointly, or two or more of them jointly, or one of them severally, as he may see proper." This conclusion is fortified when considered in connection with section 6264 of the Code of 1919, which reads thus:

"A judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers and proceed to judgment in each, or, if sued jointly, he may proceed to judgment against them successively until judgment has been rendered against, or the cause has been otherwise disposed of as to, all of the defend-

ants, and no bar shall arise as to any of them by reason of a judgment against another, or others, until the judgment has been satisfied. If there be separate judgments against different defendants for a joint wrong, the plaintiff shall elect which of them he will prosecute, but the payment or satisfaction of any one of such judgments shall be a discharge of all, except as to the costs."

The motion of the defendant, in our opinion, was properly overruled.

The next assignment of error calls in question the correctness of the following instruction given for the plaintiff over the objection of the defendant:

"The court instructs the jury that at the time of the injury here complained of, the plaintiff was a passenger in a vehicle belonging to the defendant who was a common carrier, and that the said defendant owed the plaintiff the utmost care, diligence and foresight in the operation and management of the vehicle in which the passenger was riding, and that this duty must be performed by the driver of said taxi-cab; if, therefore, you believe from the evidence that at the time of this accident, the driver of the taxi-cab in question failed in any respect to manage and operate the same with the utmost care, diligence and foresight, and that such failure proximately contributed to the accident, then you will find for the plaintiff."

Objection was made to this instruction on the sole ground that there was no evidence to support it. As a matter of convenience we will dispose of this assignment of error when we come to a discussion of the assignment of error that the verdict is contrary to the law and the evidence.

Other instructions were given for the plaintiff, but we do not deem it necessary to quote them as they are not complained of.

On motion of the defendant, the court gave the following instructions:

"D. The court instructs the jury that the defendant in any

circumstances would not be liable, if liable at all, for anything other than damages actually caused by the accident and it is not sufficient to prove that the plaintiff has suffered from causes which may possibly have resulted from the accident. She can only recover, if recovery be had, for damages which are shown by the evidence with reasonable certainty to be the direct result of the accident.

"E. The court instructs the jury that if you believe from the evidence that the Hogan car in which Mrs. Miller was riding was proceeding in a lawful manner and at a lawful rate of speed, and that the accident was in no way proximately caused or contributed to by any negligence of the driver of the said Hogan car, then you must find for the defendant.

"G. The court instructs the jury that it was the duty of A. T. Lanham on approaching the intersection at Eighth and Clay streets to keep to the right hand side of the driveway on Clay street, as close to the right hand curb as practicable, and to keep a careful look out to his right hand for cars approaching from that direction in order that he might grant the right of way to such cars, if necessary, and likewise to keep his car under such control that he could, if necessary, stop the same in order to avoid a collision with a car approaching from his right and either entering or approaching the intersection at approximately the same time as the Lanham car, and if you believe from the evidence that the accident involved in this action was proximately and solely caused by the failure of said Lanham to comply with these duties and that the driver of the Hogan car was proceeding in a lawful manner and was guilty of no negligence whatsoever, then you must find for the defendant.

"H. The court instructs the jury that there is in Virginia no specific speed limit at which a driver may drive an automobile, but the driver of said automobile is held only to the duty of driving his car at a careful and prudent speed, not greater or less than is reasonable and proper having due regard

to traffic, surface, and width of the street and of any other conditions then existing, and the court further instructs the jury that any speed up to and including twenty-five miles an hour in a residence district is presumed to be lawful."

The ultimate conclusion renders it unnecessary to enter upon a discussion of the objections interposed by the plaintiff to these instructions.

The next assignment of error challenges the action of the court in refusing to give, on behalf of the defendant, this instruction:

"The court instructs the jury that under the law of Virginia, if two vehicles approach or enter an intersection at approximately the same time, it is the duty of the driver of the vehicle on the left to yield the right of way to the driver of the vehicle on the right, and if you believe from the evidence that the car owned by J. L. Hogan and in which Mrs. Miller was riding had entered the intersection prior to the time the car driven by A. T. Lanham entered the intersection, or that the two cars approached the intersection at approximately the same time, and that the car of the said J. L. Hogan was to the right of the car driven by A. T. Lanham, and was proceeding in a lawful manner, then the Hogan car had the right of way, and it was the duty of said Lanham to yield the right of way, *and it was not negligence on the part of the driver of the Hogan car to continue across the intersection.*"

The complaint lodged against the action of the court is that it struck from the instruction the italicized language and gave the instruction as amended. The main purpose of the instruction as offered was to establish the legal principle that the driver of a motor vehicle approaching a highway or street intersection has the legal right to rely on rights given him by section 2145 (20) of the Code 1930 (motor vehicle act, sec. 19), and to assume as a matter of law that such rights will be accorded him; and that in the event an accident occurs, the

driver having the right of way will be absolved of liability. That section reads, in part:

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section twenty. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

In the uniform act regulating the operation of motor vehicles, Code 1930, section 2145 (1), subd. (q), intersection is thus defined:

"The area embraced within the prolongation of the lateral curb lines, or if none, then the lateral boundary lines of two or more highways, which join one another at an angle, whether or not one such 'highway' crosses the other."

It should be borne in mind that the case at bar does not involve a decision of the respective rights and liabilities of defendant and Lanham, and in regard to them we express no opinion.

That plaintiff was a passenger in a vehicle belonging to the defendant who was a common carrier and that the defendant owed the plaintiff the utmost care, diligence and foresight in the operation of the vehicle is beyond dispute. *Carlton* v. *Boudar*, 118 Va. 521, 88 S. E. 174, 4 A. L. R. 1480. The test of plaintiff's right to recover is not whether Lanham was guilty of negligence, but whether defendant was guilty of either primary negligence or such concurring negligence as brought about the accident. In either event, so far as the plaintiff is concerned, the result is the same. By every known rule of law or reason every reasonable means should be employed to preserve life or limb. The vice in the instruction is that it relieves the driver of the taxi-cab of the duty of exercising ordinary care and grants unto him the right to cross an intersection with impunity, provided he has the right of way accorded by statute. This is not the law applicable to

the transportation of passengers by such common carriers as taxi-cabs and "cars for hire." The situation of a passenger is different from that of the ordinary drivers of cars approaching an intersection. While one operating a car has within reach such means of protection as brakes, steering wheel and an opportunity of observation, the passenger is at the mercy of the driver, and especially so if the driver is imbued with the idea that he has the legal right to maintain his right of way regardless of danger or conditions.

In the enactment of section 2145 (20), motor vehicle act, section 19, the legislature never intended to relieve the driver of an automobile of the duty of exercising due care when approaching an intersection, even though he may have the right of way.

In 37 A. L. R., 509, the rule is thus stated:

"The mere fact that one vehicle has the right of way over another at a street or highway intersection does not relieve the driver of the vehicle thus favored from the duty of exercising due care to avoid collision at the intersection."

In *Blashfield's Cyclopedia of Automobile Law,* Vol. 1, page 494, we read:

"Too firm an insistence upon the right of way, even when one is clearly entitled to it, may be the grossest kind of negligence. Under such rule, if it appears to the driver of the car having the right of way, or if he can, by the exercise of care commensurate with the danger of the situation, discover that the other driver does not intend to yield the right of way, or intends to take precedence, and that a collision will likely occur, he cannot recklessly proceed, but is bound to stop or to turn aside, if, in the exercise of ordinary care for his own safety, he can do so * * *."

In *Burdette* v. *Henson,* 96 W. Va. 31, 122 S. E. 356, 37 A. L. R. 489, a case involving the construction of a statute similar to our statute, we read in the syllabus:

"Where the statute gives right of way to a driver ap-

proaching an intersecting highway from the right over vehicles approaching from the left, he is not thereby relieved of the duty to use reasonable care to avoid collision with such vehicles approaching from the left."

To the same effect is *Jones* v. *Cook,* 96 W. Va. 60, 123 S. E. 407, 408, where the court in its syllabus said:

"A city ordinance, giving to a vehicle approaching a street crossing on one of the intersecting streets right of way over vehicles traveling on the other, does not relieve the driver of the former vehicle from the duty of exercising reasonable care to avoid collision with the latter."

The statute is a regulatory statute, designed to prevent accidents and not to encourage them by licensing taxi-cab drivers to proceed at will.

The action of the trial court in refusing to give the instruction as offered and in giving the instruction as amended is without error.

The next assignment of error calls in question the refusal of the court to give instruction "C," reading as follows:

"The court instructs the jury that if you believe from the evidence that the Hogan car in which Mrs. Miller was riding at the time of the accident involved in this case had entered the intersection prior and ahead of the time that the automobile driven by A. T. Lanham entered said intersection, and that said Hogan car was approaching from the right of said automobile, then it was the duty of the said Lanham to grant the right of way to the said Hogan car and to check, or stop his car, if necessary, in order that the said Hogan car might cross the said intersection, and the driver of the said Hogan car was entitled to rely on said Lanham to grant said right of way. If you believe from the evidence that the accident was proximately caused by the failure of the said Lanham to grant such right of way after the said Hogan car had entered said intersection, and that said Hogan car was proceeding in a lawful manner then you must find for the defendant."

In our opinion instruction "C" was fully covered by the instructions given and it was not error to refuse to give it.

It is assigned as error that the court erred in refusing to set aside the verdict as being contrary to the law and the evidence. Our view of the law of the case has already been indicated and leads to the conclusion that the court did not err in giving to the jury instruction No. 1, *supra*, "on the ground that there was no evidence to support it."

To attempt to set forth the evidence in detail and follow the ramifications and argument of counsel would unnecessarily prolong this opinion. A careful examination of the evidence leads to the conclusion that defendant's driver, Webber, failed to exercise that degree of care required by law of a common carrier of passengers. The evidence upon which this conclusion is based, from plaintiff's standpoint, may be thus concretely stated: Webber was seeking to transport plaintiff from the Southern Railway Station to the station of the Norfolk and Western Railway in a short period of time, knowing full well that the object of plaintiff was to board the train for Roanoke. When he reached the intersection of Clay and Eighth streets he looked to the right and then proceeded into the intersection for a distance of approximately twenty-five feet before he looked to observe whether any automobile was approaching from the left. Relying, no doubt, on the fact that he had the right of way; that no car was approaching from his right, he failed to observe the approach of the Lanham car. By his own evidence it is established that if he had looked to the left after looking to the right he could have seen the approach of Lanham; that an accident was imminent unless he or Lanham stopped; that he could have stopped his car in time to avoid the accident regardless of who had the right of way, or, after having discovered the approach of Lanham, by merely turning to the right into Clay street he could have avoided the collision. As a witness he was asked this question: "If you had wanted to turn, if you had turned

into Clay street, there would have been no collision, would there?" He answered: "No, sir." With this palpable admission of negligence before us, so far as the plaintiff is concerned, why continue a discussion of the right of way, excessive speed, proximate cause, concurring negligence, approach to the intersection, or presumption that Lanham would yield the right of way when impact was imminent? There is no merit in this assignment of error.

■ It is assigned as error that the court erred in overruling defendant's objections to evidence.

Dr. Whitman, a physician testifying for Mrs. Miller, was asked the following hypothetical question:

"A patient is injured with concussion more or less severe, which produces several hours, I don't know how many, anywhere from two to twenty-four hours unconsciousness, I don't know just how much it was, and then, that patient after being discharged from your treatment comes back and continues to complain of those headaches. What is your diagnosis of those cases?"

The question was objected to on the ground that it did not state "all the facts for a hypothetical question. It does not state that those headaches occur with less and less frequency."

The objection was overruled, to which petitioner excepted, and the witness answered:

"The prognosis is not good. As I have stated before, there is no classification that gives the physician more difficulty in bringing them back to normal state."

The record reveals that Dr. Whitman had previously been asked the following questions and had made the following answers:

"Q. Assuming, doctor, that the patient came to your hospital with those severe headaches and nervousness and that they persisted up to the present time, although less violent and less frequent, what would you say is the condition of the

patient now with reference to that concussion of the brain or what would be your prognosis?"

"A. The natural assumption is that she has not entirely recovered from the effects of the accident or the concussion that she sustained.

"Q. What would be your prognosis?

"A. Those cases ultimately recover and come back to normal, but sometimes it is over a prolonged period of many months.

"Q. Do some of them not recover at all?

"A. Some do not."

The cross and re-cross examination of the witnesses discloses these questions and answers:

"Q. You stated a little while ago when Colonel Woods outlined to you the circumstances and the facts of these headaches, that they had continued to gradually improve and become less frequent, and that your prognosis was that she would untimately recover?

"A. Yes, sir.

"Q. From the situation outlined that would probably be what would happen?

"A. Yes, sir.

\*   \*   \*   \*   \*   \*   \*   \*

"Q. You stated your prognosis of the case was doubtful. I believe that is the effect of what you said, if not your words. You just stated a little while ago on direct examination and also on cross-examination that your prognosis of this case was ultimate recovery.

"A. I was answering a hypothetical question last time.

"Q. Assuming these headaches to which he referred occurred with less and less frequency, and less and less severe, would that indicate there would be an ultimate recovery?

"A. An encouraging sign.

"Q. And there would be an ultimate recovery?

"A. Encouraging; yes, sir."

With the above evidence before the jury we are unable to perceive how the defendant could have been prejudiced by the question asked and the answer given.

The last assignment of error is based on the contention that the damages awarded the plaintiff—$10,000.00—are excessive.

The proof shows that the plaintiff, a married woman, in good health, as a result of the accident, suffered a severe concussion of the brain, followed by amnesia for a period of days, suffered from dizziness, affection of the eyesight, upset nerves and loss of sleep. She also suffered a miscarriage which a medical expert testified resulted from the accident and which predisposed her to subsequent ones. She was a graduate nurse, earning the sum of eighty dollars per month in addition to her living expenses. After her injury she was for a long time incapable of pursuing her professional duties, and at the time of the trial her condition was such that she could not regularly engage in strenuous nursing. When tested by the facts appearing, we are unable to say that the verdict was the result of either passion, prejudice, bias or sympathy.

The judgment complained of is right and must be affirmed.

*Affirmed.*

Epes, J., dissenting:

I concur in the conclusion reached by the court upon questions of pleading involved in this case; but find myself unable to concur in the decision reached by the court upon the merits.

It is true that the defendant's driver was negligent in not having looked to the left before entering the intersection of Clay and Eighth streets. But, the evidence, I think, shows that had he looked to the left before entering the intersection that he would have seen nothing which would have put him on notice or guard that Lanham did not intend to yield the right of way to him, or that a collision would likely occur if he

proceeded on his way relying upon the fact that he had the right of way. The fact that the driver failed to look before entering the intersection does not make him an insurer against the negligence of the driver approaching on an intersecting street, to his left; but only charges him with knowledge of what he would, or ought to have, seen had he looked.

The statement by the driver of the Hogan car that if he had turned into Clay street, there would have been no accident, when taken in the connection in which it was said, I think, is not to be construed as an admission by him of negligence on his part.

Upon a very careful analysis and re-analysis of the evidence in this case, I am of opinion that the evidence fails to establish any actionable negligence on the part of the Hogan car, and that, on the contrary, it shows that the accident was due solely to the negligence of Lanham, the driver of the car which was traveling on Clay street.

I think that the court in modifying the instruction offered by the defendant which relates to the right of the driver having the right of way to rely upon such right of way and proceed at a street intersection, instead of striking out any part thereof, should have added to the instruction some such language as this: Unless you further believe from the evidence that the driver of the Hogan car saw, or had he been keeping a proper lookout ought to have discovered, that the driver of the Lanham car did not intend to yield the right of way, and that a collision would probably occur if he attempted to proceed across the intersection.

However, it is to be noted that the defendant did not at any time suggest to the trial court that the instruction be modified in this way.

In one of the instructions given at the request of the plaintiff the court instructed the jury "that the defendant owed the plaintiff the utmost care, diligence and foresight in the operation and management of the vehicle in which the

passenger was riding." This language has been used in some of the cases decided by this court which involved the duty owed by a common carrier to a passenger; and probably for this reason was not objected to by the defendant on the ground that it incorrectly defined the duty of the driver of the Hogan car to the plaintiff. But I do not wish to be understood as approving this language in defining the duty of the driver in a case such as this.

The driver of a taxi-cab owes a high degree of care to his passenger; but to say that he owes the *"utmost* care, diligence and foresight" is not accurate, and if not modified may lead to absurd conclusions. For instance, the utmost care would require that the driver stop before crossing almost every street intersection and that he proceed at practically all times at so slow a rate of speed as to render taxi-cab service well-nigh useless.