# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

YELLOW CAB COMPANY, INC. v. ISADORE VIRGINIA EDEN.

October 13, 1941.

Record No. 2373.

Present, All the Justices.

The opinion states the case.

*T. L. Hutton, George M. Warren* and *H. E. Widener,* for the plaintiff in error.

*Thomas C. Phillips* and *Roby C. Thompson,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Mrs. Isadore Virginia Eden instituted this action against the Yellow Cab Company, Inc., to recover compensation for personal injuries arising from a collision between one of the defendant's taxicabs, in which she was a passenger, and the automobile of another. The Yellow Cab Company, Inc., hereinafter referred to as the defendant, pleaded the general issue and filed its grounds of defense denying that it was guilty of any negligence proximately contributing to the injuries of the plaintiff. It asserted that the collision was brought about by the negligence of an independent agency over which it had no control.

A verdict was rendered by the jury for the plaintiff in

the sum of $2,500 upon which the trial court entered final judgment.

The defendant seeks to have the judgment reversed, contending that the trial court erred in excluding evidence offered by it, in limiting the effect of certain testimony, in granting and refusing certain instructions, and in refusing to set aside the verdict as contrary to the law and the evidence.

The evidence, stated from the strong position occupied by Mrs. Eden by virtue of the verdict and judgment in her favor, may be summarized as follows:

On June 19, 1939, Mrs. Eden, sixty-two years of age, called one of the defendant's taxicabs to come to her home in the west end of the town of Abingdon, Virginia, and carry her to a hospital located about one and one-half miles distant, in the eastern part of that town. It was raining and the streets were wet and slippery.

The defendant maintains and operates cabs for hire. Its cab, a sedan, operated by its driver, Akers Roark, called for Mrs. Eden at her home about eleven a. m. of that day, took her up as a passenger and proceeded to the hospital. He drove east down Main street to the Court House and then turned left on Court street. He travelled north on this street for one block, and as he was crossing its intersection with Valley street, which it intersects at right angles, the taxicab collided with a Chevrolet coupe travelling west on Valley street, and driven by Isaiah Perkins. Court street is fifty-four feet wide, with a paved surface of twenty-four feet. Valley street is thirty-six feet wide. The coupe came into collision with the right rear end of the taxicab when all but the last three feet of its rear had passed through the intersection.

An ordinance of the town of Abingdon required all motor vehicles to come to a stop within fifteen feet of Valley street before entering therein. As a safety and precautionary measure, a stop sign had been accordingly placed on Court street about fifteen feet from its intersection with Valley street.

Mrs. Eden testified that Roark drove rather fast on Main street; that he slowed down somewhat on entering Court street; and that he did not bring the cab to a stop before entering Valley street. She did not see the Chevrolet coupe and was able to give few other particulars because the collision happened very quickly while she was looking at the clouds to see the extent of the rain.

Another witness, David Bird, a colored man, said that he was looking at the taxicab as it approached and entered Valley street, and that it made no stop before entering that street.

Isaiah Perkins, the driver of the coupe, called as an adverse witness, said that he saw the taxicab enter Valley street when he was "pretty close to it, * * * probably one hundred feet" away; that he was travelling between twenty and twenty-five miles per hour and was "too close to stop as slick as the street was;" that he did not put his brakes on because he knew his car would slide if they were put on tight enough to lock the wheels; and that he did not turn to the left because he thought he saw a car coming towards him on Valley street.

He was asked by counsel for the defendant if he had not on July 9, 1939, in the presence of several persons, made the statement that he could have stopped his car, but that he tried to knock the cab out of the way and the next time one got in his way he would knock it out, if he had to get a truck to do so. He positively denied that he had ever made any such statement.

The driver of the taxicab testified that he drove on Court street at ten to twelve miles per hour; that he called out to a friend as he passed him on that street; that he stopped before entering Valley street; that he saw the car driven by Perkins coming from the east about two hundred yards from the intersection; that he could not say at what rate of speed it was being driven, but it "was making a pretty fast rate of speed;" that he did not wait after stopping because said he, "I thought I could make it;" and that he crossed Valley street in low

gear at seven miles per hour, never looking again to see where Perkins' car was until it was eight or ten feet from the taxicab. Three times he said, "I never paid any mind to it as to how he was running. It looked like I could make it." He admitted that the consequences showed that he was mistaken as to the speed of the coupe.

The friend to whom Roark called as he passed along Court street said that the cab pulled up to the stop sign and stopped before entering Valley street.

The taxicab was knocked completely around so that it faced south. The coupe stopped on Valley street within its length.

The jury viewed the scene of the accident.

Mrs. Eden, who was on the back seat of the taxicab, was severely injured and immediately taken to the hospital where she was a patient until July 15th. She suffere an impacted fracture of the collar bone, that is, the bone was broken and the fragments were driven into each other. When the fracture healed the collar bone was about one-half inch shorter than before. This resulted in certain deformities of the shoulder and about a fifty per cent limitation of the ordinary use of her right arm and hand. She had other bruises about the face and head causing her much pain and discomfort. She has since been unable to give full attention to her personal care and to her household duties.

The trial court refused to require the witness, Perkins, to answer certain questions as to whether he had been drinking the night before the accident and was under the influence of some intoxicant at the time of the accident. It also refused to allow the town sergeant to testify that a felon warrant had been issued against Perkins on a hit and run charge arising out of the collision.

█ The record shows that if Perkins had been allowed to answer, he would have admitted that he had drunk four or five cans of beer the night before; but would have denied that he was drinking or intoxicated on the morning of the accident. He had previously testified that he had nothing to drink on the morning in question. Nor

was there any evidence offered in contradiction of Perkins' testimony to the above effect. The answers to the above questions had no bearing on the negligence of Roark, the cab driver, and they were, therefore, immaterial and irrelevant.

The deposition of Homer Sapp, which dealt solely with the condition of a passenger of Perkins' car, was likewise immaterial.

The defendant produced several witnesses, who testified before the jury in contradiction of the adverse witness, Perkins, that the latter, sometime in July or September, 1939, made a statement while he was drinking and "trying to raise a racket with Roark," that he did not try to stop his car and the next time a cab got in his way he would knock it out, if he had to get a truck to do so. The court, over the protest of the defendant, instructed the jury that they could consider the alleged inconsistent statements only for the purpose of contradicting the witness, Perkins. The ruling of the court was in accord with Virginia Code, 1936, section 6215.

The test of the plaintiff's right to recover was whether the defendant was guilty of such primary or concurring negligence as brought about the accident. It was not whether Perkins was also guilty of negligence. Conceding that Perkins was guilty of gross negligence, that did not relieve the defendant of its own negligence, if such negligence was a proximate cause of the accident.

The alleged declaration against the interest of Perkins was sought to be used as a declaration against the interest of Mrs. Eden. Perkins was not a party to the action nor in privity with the plaintiff. He was not an agent or a servant. The declaration was not a part of the *res gestae*. Perkins denied that he made the statement. He also controverted the truth of its allegations. No one testified that the circumstances stated by the alleged declaration were true. Whether or not the declaration was made, therefore, simply related to the veracity of Perkins, not the truth of the matter stated. If made,

it was merely an extra-judicial statement and was not binding upon the plaintiff.

As a general rule, a declaration against the interest of the person making it, notwithstanding its hearsay character, is admissible only if the declaration is relevant and the declarant has died, become insane, or for some other reason, is not available as a witness. 20 Am. Jur. section 556; 2 Wigmore on Evidence (1904 Ed.) section 1456. There are no circumstances here involving the exceptions to the general rule.

On the subject of admissions or declarations against interest in 9 Blashfield, Cyclopedia of Automobile Law and Practice, page 519, section 6213, it is said:

"If parties are sued as concurrently liable, or one is sued as the actual tort feasor and the other under the *respondeat superior rule,* the admissions of one cannot be used against the other. So, if the admissions of one, or evidence admissible only as to one, is offered, the court should, by proper instruction, limit their effect to the question of the liability of the one against whom they are competent."

The case of *Hines* v. *Commonwealth,* 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431, cited to support the contention of the defendant, is not in point. In that case Hines had been convicted on circumstantial evidence of killing a police officer. Hines moved for a new trial on the ground of after-discovered evidence, including certain circumstances connecting a third person with the crime and the declarations of the third person, then deceased, that he and not Hines was the perpetrator of the homicide. In granting a new trial, this court held that the confession of the deceased should be allowed to go to the jury for what they might consider it worth, but expressly limited the effect of its holding as a precedent to the particular facts of that case.

We think it is clear that there was no evidence that Mrs. Eden was guilty of contributory negligence. The defendant relies upon her statement that Roark drove

with too much speed on Main street. It must be remembered that she said he slacked his speed when he turned into Court street. However, from no standpoint was a rapid rate of speed responsible for the collision. The cab was proceeding very slowly at the time of the collision.

█ It was not the duty of Mrs. Eden to direct and control the driver nor to keep a lookout for approaching cars. There was no reason why she should not look out the windows and at the clouds. The fact that she was observing the clouds did not prevent her from knowing whether or not the cab stopped.

█ The situation of a passenger is different from that of the driver of a car approaching an intersection. Ordinarily passengers have no duty to direct and control the driver unless it is obvious that the driver is taking no precautions for their safety. *Mize* v. *Gardner Motor Co.*, 166 Va. 415, 186 S. E. 108.

Upon the driver devolves the duty of protection. He has within his means protection by the brakes, by the steering wheel and from the disclosures afforded by observation. It is only when the passenger observes a dangerous condition of which the driver is apparently unconscious or oblivious that it becomes the duty of the passenger to warn the driver. It is the driver's duty to employ every reasonable and practical means to preserve the life and limbs of his passenger. Cars for hire are frequently employed by a passenger to relieve him of the care required in driving. It would be a dangerous rule, indeed, to require that the passenger of a taxicab direct its driver how to operate the cab.

█ In *Hogan* v. *Miller*, 156 Va. 166, 157 S. E. 540, a case where the facts were unusually similar to those of the present case, Mr. Justice Campbell, now Mr. Chief Justice Campbell, speaking for the court, said, as may also be said here: ''That plaintiff was a passenger in a vehicle belonging to the defendant who was a common carrier and that the defendant owed the plaintiff the ut-

most care, diligence and foresight in the operation of the vehicle is beyond dispute. *Carlton* v. *Boudar,* 118 Va. 521, 88 S. E. 174; 4 A. L. R. 1480.'' *Chesapeake & O. R. Co.* v. *Hibbs,* 142 Va. 96, 128 S. E. 538; 41 A. L. R. 1083; *Portsmouth* v. *Madrey,* 168 Va. 517, 191 S. E. 595.

The plaintiff asked for seven instructions and the defendant for sixteen. Some of those requested were merely amendments of those refused. The court granted five at the request of the plaintiff and six for the defendant.

The office of instructions is to define for the jury, and to direct their attention to, the legal principles which apply to and govern the facts which the evidence tends to establish. They are to enlighten the jury and not to confuse their minds. It is unnecessary to multiply them beyond the point of fairly submitting the law upon all the points involved. Repetitious legal language and contradictions are to be avoided.

The objection to instruction number 1 is that it fails to recite that contributory negligence on the part of the plaintiff would bar her recovery. An instruction in the identical language was given and approved in *Hogan* v. *Miller, supra.* In view of the fact that the evidence does not disclose contributory negligence on the part of Mrs. Eden, this assignment of error is without merit. Nevertheless, the defendant's instruction ''A-3'' favored the defendant by presenting the question of contributory negligence to the jury.

The six remaining instructions given at the request of the defendant fully, completely and clearly instructed the jury as to the defendant's grounds of defense. This they did to such an extent that we set them out in a footnote herewith to show how fairly the issues from the standpoint of the defendant were presented to the jury.*

---

*''A1—The court instructs the jury that the defendant was not an insurer of the safety of the plaintiff while traveling in the taxicab as a passenger on the occasion in question.

''A3—The court instructs the jury that it is the duty of a passenger in an automobile to exercise such care for his, or her own safety as a reasonably prudent person would take under like circumstances, and if you believe from the evidence that the plain-

 The defendant complains of the refusal of the trial court to give requested instructions "A," "D," "E," "F," "F-1," and "G." "A" is misleading in failing to define the degree of care required of the defendant. As a common carrier, the defendant owed to its passenger the duty to exercise the utmost practical care, diligence, and foresight in the operation of its cab for her safety. In addition, the proper object of the instructions is correctly set out in the given instructions "A-1," "A-3," and "E-1." "D" failed to take into consideration the circumstances attending the collision. The pertinent recitals of "E" were embraced in the given instruction "E-1." "F" and "F-1" ignored the duty of the cab driver and failed to sufficiently cover the evidence. "G" was covered by given instruction "B."

 Considering the circumstances of the case and the questions involved, we think it quite apparent that the issues were fairly and fully submitted to the jury and that the defendant has no proper cause of complaint.

The instructions required the jury to determine whether or not the consequences naturally flowed from the wrongful act or neglect of Roark, and whether, as a reasonably prudent man, he should have anticipated the natural consequences of his conduct. They were told that if the collision was caused solely by the negligence of Perkins, the defendant was not liable.

We come now to a consideration of the sufficiency of the evidence to support the verdict. According to that which is favorable to the plaintiff, we find that Roark, without stopping at the intersection, on a rainy day with the pavement wet, attempted to cross an arterial street

---

tiff failed to exercise such care for her own protection, then she would be guilty of such contributory negligence as would bar a recovery.

"B—The court instructs the jury that the happening of the accident in this case is not in itself evidence of negligence, and before the plaintiff can recover in this action the burden is on the plaintiff to prove, by a preponderance of the evidence, that the defendant was negligent, and that the negligence of the defendant was the or a proximate cause of the accident.

thirty-six feet wide at a speed of seven miles per hour, in front of an approaching automobile one hundred feet away and running at a speed of twenty to twenty-five miles per hour. According to Roark, he stopped at the intersection, and notwithstanding he saw approaching at an unknown but manifestly rapid rate of speed, an automobile, which he thought was two hundred yards away, he took his eyes off that automobile and trusted to his own safety in making the crossing because he entered the intersection first. Perkins said he was unable to stop his car or to turn away from the cab because of the existing circumstances.

■■■ The facts present a case peculiarly for the determination of a jury. It was the duty and function of a jury to pass upon the credibility of the witnesses and to resolve the conflicts in the testimony. In doing this, they had the advantage of considering their appearance and demeanor while testifying, their interest in the case, and their opportunity to observe the matters about which they testified. It was for them to determine whether the failure of the taxicab to stop before entering the intersection and to remain stopped, or the action of Roark in entering the intersection is complete disregard of the first approaching automobile, either jointly or severally, operated as such primary or concurring negligence as brought about the collision.

---

"C-1—The court instructs the jury that if you believe from all the evidence in this case that the injuries complained of by Mrs. Eden were solely caused and brought about by the negligence of Isaiah Perkins in the operation of his car at the time and place in question, then you will find for the defendant.

"E-1—The court instructs the jury that it was the duty of Perkins, in the operation of his car, when approaching the intersection at the intersection of Court and Valley Streets in the town of Abingdon, Virginia, to use reasonable care to keep his car under control, and like care to keep a proper lookout, and like care to keep his car under such control that he could, if necessary, stop same in order to avoid a collision with another car already within the intersection as Perkins approached same, and under all the facts and circumstances it was the duty of Perkins, having due regard to the width, traffic, surface and all other conditions then and there existing, to exercise ordinary care in the operation of his au-

██ If Perkins was travelling between twenty and twenty-five miles an hour, he was running around thirty-five feet a second. If his testimony be believed, there was little time left after his mind reacted to the situation, presented by the sudden appearance of the taxicab, before the collision occurred. If the evidence of Roark be accepted, he drove out from a place of safety in front of a car fast approaching on a wet street. Such an act was an invitation to disaster, and the collision that occurred was a natural and probable consequence.

██ As we have said time after time, the mere fact that one vehicle has the right of way over another at a street intersection does not relieve the driver of the vehicle thus favored from the duty of exercising due care to avoid a collision. *Hogan* v. *Miller, supra,* and cases cited; *Johnson* v. *Harrison,* 161 Va. 804, 172 S. E. 259; *Nicholson* v. *Garland,* 156 Va. 745, 158 S. E. 901; *Yellow Cab Co.* v. *Gulley,* 169 Va. 611, 194 S. E. 683; *Ellett* v. *Carpenter,* 173 Va. 191, 3 S. E. (2d) 370.

██ The driver of a car who keeps a lookout and fails to take advantage of what it discloses is as guilty of negligence as one who fails to keep a lookout. The result is usually the same. *Yellow Cab Co.* v. *Gulley, supra.*

This case may be readily distinguished on the facts from *Roanoke Ry. & Elec. Co.* v. *Whitner,* 173 Va. 253, 3 S. E. (2d) 169, and *Hubbard* v. *Murray,* 173 Va. 448, 3 S. E. (2d) 397. In those cases the negligence of each of the original *tort feasors* was held to be merely a cir-

---

tomobile, and if you believe from the evidence that Perkins did not exercise such care, and that the accident involved in this action was proximately and solely caused by the failure of the said Perkins to comply with his duties in the operation of his said automobile, and if you further believe that the cab driver was proceeding in a lawful manner, and was guilty of no negligence, then you must find for the defendant.

"H—The court istructs the jury that the defendant in any event would not be liable, if liable at all, for anything other than damages actually caused by the accident in question, and it is not sufficient to prove that the plaintiff has suffered from causes which may have possibly resulted from the accident. She can only recover, if recovery be had, for damages which are shown by the evidence with reasonable certainty to be the direct result of the accident."

cumstance of a collision or a remote cause thereof. They were not charged with foreseeing that which could not reasonably have been expected to happen. The consequences did not naturally flow as the result of their original negligence. They were proximately caused by an independent, inefficient, and wrongful act which intervened between the original wrongful act and the injury ultimately occasioned. The jury might have found, in the present case, that a collision, in the light of the attendant circumstances, was not only probable, but should have been reasonably foreseen and anticipated by a prudent man.

The defendant further contends that the damages were excessive. The plaintiff's injuries were severe and permanent. She suffered much pain. She has been deprived of the full measure of her strength.

It does not appear that the jury were influenced by passion or prejudice, or that they misconceived the legal principles applicable. There is no standard measure for damages of this kind. Its measurement by an impartial, fair-minded jury, under proper instructions, is the best method we have been able to devise. We know of no precedent or reason which would justify us in setting aside the award to her. See *Aronovitch* v. *Ayres*, 169 Va. 308, 193 S. E. 524, where Mr. Justice Holt reviewed numerous Virginia cases and accurately recited the law on this subject. *Stuart Circle Hospital* v. *Curry Corp.*, 173 Va. 136, 3 S. E. (2d) 153, 124 A. L. R. 176.

All of the issues were fairly submitted to a jury; the jury, in the light of credible testimony, reached the conclusion that the failure of Roark to exercise the degree of care required of him was a proximate cause of the injuries suffered by the plaintiff; an able, learned, and experienced trial judge approved their verdict; and there is sufficient evidence to sustain the judgment. It must, therefore, be affirmed.

*Affirmed.*

Browning, J., dissenting.