## Richmond

C. C. SELFE, TRADING AS C. C. SELFE BUS LINES v. BEULAH HALE, ET AL.

SWORDS CREEK MINING CORPORATION v. BEULAH HALE, ET AL.

March 10, 1952.

Record Nos. 3898, 3893.

Present, All the Justices.

544

The opinion states the case.

*Crockett & Gillespie,* for C. C. Selfe, Trading as C. C. Selfe Bus Lines, plaintiff in error.

*Burns & Lively,* for Swords Creek Mining Corporation, plaintiff in error.

*William A. Stuart* and *M. M. Long,* for Beulah Hale, defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On the afternoon of January 6, 1949, Beulah Hale, a young unmarried woman twenty-two years of age, was a passenger on a bus operated by C. C. Selfe, trading as C. C. Selfe Bus Lines, between Richlands, in Tazewell county, and Honaker in Russell county, Virginia. She was on her way from Richlands, where she was regularly employed, to her home in the village of Swords Creek in Russell county. Since the bus route did not run

through Swords Creek it was her custom to alight at a near-by road junction and walk to her home.

On this occasion, about five p. m., during daylight, the bus stopped on the highway, with its rear extending across the railroad track of the Swords Creek Mining Corporation which crossed the highway at this point. Miss Hale alighted from the bus at the right front exit and started around the front of the vehicle in the direction of her home. Just as she reached the front of the bus the left rear end of that vehicle was struck by the end of a freight car which, with five others, was being pushed along the track and across the highway by an engine operated by the servants and employees of the Mining Corporation. The force of the impact threw or forced the front of the bus against her, knocking her down and injuring her.

In an action to recover damages for her injuries Miss Hale has recovered a verdict and judgment of $8,000 against both defendants. The matter is before us on the separate petitions of the two defendants, based upon a single record.

The numerous assignments of error filed by the two defendants make these principal contentions:

While Selfe concedes that the driver was negligent in stopping the bus on the railroad track, he says that such negligence was the remote cause and that the negligence of the operators of the train was the proximate cause of the collision. Selfe argues that the Mining Corporation was negligent in that its employees failed to give the signals required by Code, § 56-414, of the approaching train; that they failed to keep a proper lookout for the bus, and failed to stop the train after they saw, or should have seen, that the bus was on the track.

The Mining Corporation contends that:

(1) The lower court erred in holding and instructing the jury that the employees of the train were required to give the signals provided for by Code, § 56-414.

(2) Conceding that the statutory signals were required during the operation of this train, the evidence fails to show any causal connection between the failure to give such signals and the collision.

(3) There is no evidence showing that the operators had sufficient time to have stopped the train and averted a collision after they saw, or should have seen, that the bus was on the track.

(4) In any event, the lower court erred in not submitting to the jury, by proper instructions, whether such operators had sufficient time to have stopped the train and avoided the collision after they saw, or should have seen, that the bus was on the track.

Both defendants make these added contentions: (a) The plaintiff was guilty of contributory negligence as a matter of law, and (b) the court erred in allowing the plaintiff to introduce hearsay evidence as to the nature and result of her injuries.

The railroad here involved is maintained and operated by Swords Creek Mining Corporation in connection with its coal mining operations. It extends from its junction with the Norfolk & Western railroad, near the scene of the accident, northwardly and up Swords Creek for a distance of about three and one-half miles to the coal mines. While the railroad is of standard gauge it has no facilities for serving the public. Its principal function is to carry loaded and empty coal cars between the mines and the junction with the Norfolk & Western railroad. Heavy supplies used in the mining operations are likewise transported along the line.

Empty cars are usually carried from the junction to the mines in the morning and the loaded cars are returned from the mines to the junction in the afternoon. The motive power is supplied by a "shay" or gear engine capable of a maximum speed of from fifteen to twenty miles per hour. In hauling loaded cars, as was being done at the time of the accident, the engine is put in reverse gear and the cars are pushed ahead of it.

The crew consists of an engineer whose seat is on the left-hand side of the cab when the engine is in reverse gear, and a brakeman or lookout who is stationed on the front end of the leading car as the train is pushed by the engine toward the junction. The train as thus made up is equipped with air brakes which may be applied either by the engineer or the lookout. The engine is equipped with a bell and a shrill steam whistle.

From the mines to the crossing where the accident occurred the railroad proceeds in a southerly direction downgrade on the eastern side of Swords Creek. The highway along which the bus route lies is on the western side of Swords Creek and thus, generally speaking, runs parallel with the railroad. As the railroad approaches the accident crossing, it makes a wide right-hand turn and then straightens out and proceeds across the highway to its junction with the Norfolk & Western railroad.

It is conceded by all of the parties that for a distance of approximately one-half of a mile above the accident crossing, the operator of the bus in approaching the crossing had an uninterrupted view to his left of the approaching train. Similarly, the lookout or brakeman stationed on the front end of the car, as it approached the crossing, had an uninterrupted view to his right of the bus.

It is likewise conceded by all of the parties that the accident occurred during daylight when the visibility was good.

The bus usually stopped to discharge Swords Creek passengers at a filling station on the right-hand side of the highway, a short distance before reaching the railroad crossing, but on this occasion it was driven onto the crossing and brought to a stop with its rear end protruding partly across the railroad track. The vehicle remained in this position until it was struck by the train.

The plaintiff testified that she was riding on the righthand front seat of the bus, opposite the driver. She did not observe that the bus had stopped on the track. As she said, she alighted from the exit at the right front end of the bus and did not see the train which was approaching the bus on the opposite side. She said she "waited" to see what movement, if any, the bus would make. She observed two other passengers getting off there and then concluded that she had sufficient time to walk around the front of the bus before it moved. When she was in the act of doing this the collision occurred.

The owner and operator of the bus offered no evidence and we are not told what the driver knew about the circumstances of the collision.

The engineer testified that he saw the bus on the highway about a quarter of a mile from the crossing, but that as the train neared the crossing and rounded the curve his view of the approaching bus was obstructed by the cars ahead.

Both the engineer and the lookout estimated the speed of the train at fifteen miles per hour and there is no evidence to the contrary. They also agreed that at this speed it required from 180 to 225 feet to stop the train of loaded cars by the application of the air brakes.

The brakeman or lookout who was stationed on the front end of the leading car admitted that he did not see the bus as it came down the highway and before it reached the vicinity of the cross-

ing. He said that when he first saw the bus the end of the car on which he was riding was "about 150 feet of' the crossing" and the bus was "just approaching the crossing." He "thought the bus was going on," but it came to a stop on the crossing when the end of the car was only about 75 or 80 feet from it, and that he then did not have sufficient time within which to turn the "angle cock" and apply the brakes and stop the train. Seeing that a collision was inevitable, and fearing that he might be killed or seriously injured, he jumped from the end of the car when it was about four or five feet from the bus. By this time the engineer had seen the bus, applied the brakes, and brought the train to a stop after the collision had occurred.

Other witnesses on behalf of the Mining Corporation testified that when the bus came to a stop on the crossing the front car of the train was from 85 to 100 feet away.

There was evidence, to which we will later refer, which supports the inference that when the bus stopped the end of' the train was farther from the crossing than these witnesses said it was.

The evidence on behalf of the Mining Corporation is that the engineer gave two signals on the whistle of "two longs and two shorts" each as the train approached the crossing. One of these signals was given when the train was about 700 feet from the crossing and the other when it was about 350 feet away. No other signals were given with the whistle and it is admitted that the bell was not rung as the train approached the crossing.

It is manifest that the driver of the bus was negligent in stopping his vehicle on the track and allowing it to remain there for the purpose of discharging passengers when he saw, or should have seen, the approaching train. Indeed, as has been said, the defendant, Selfe, concedes that the driver was negligent in this respect, but he contends that such negligence was the remote cause and that the negligence of the operators of the train was the proximate cause of the collision. He argues that the negligence of the train crew insulated the original negligence of the bus driver under the principles examplified in *Hubbard* v. *Murray,* 173 Va. 448, 3 S. E. (2d) 397.

But as we pointed out in *Jefferson Hospital* v. *Van Lear,* 186 Va. 74, 82, 41 S. E. (2d) 441, 444, "An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen

by the wrongdoer." See also, *Crist* v. *Fitzgerald*, 189 Va. 109, 118, 52 S. E. (2d) 145, 149.

We have many times said that the question of proximate cause or causal connection is usually for the jury.

In the present case the lower court, at the request of the defendant, Selfe, granted an instruction which submitted to the jury whether the negligence of the bus driver in stopping the bus on the track was the remote cause and the negligence of the train crew in failing to avoid the collision was the proximate cause thereof. This issue the jury has resolved in favor of the plaintiff. It found, as it had the right to do, that a collision in the light of the attendant circumstances was not only probable but should have been reasonably foreseen and anticipated by the original wrongdoer, the bus driver. Its finding on the issue is conclusive of the matter. *Yellow Cab Co.* v. *Eden*, 178 Va. 325, 342, 16 S. E. (2d) 625, 631; *Crist* v. *Fitzgerald, supra.*

The first contention of the Mining Corporation is that the lower court erred in holding and instructing the jury that the employees of the train were required to give the crossing signals provided for by Code, § 56-414. This statute provides that: "Every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any highway or crossing, and *such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing,* * * *." (Emphasis added.)

The argument is that the section is "found among the provisions of the Code dealing exclusively with public service corporations," that it "is applicable only to railroad companies," and that the Mining Corporation is neither of these.

Code, § 56-342, is, we think, a sufficient answer to this contention. It authorizes a "corporation engaged in operating a mine within ten miles of any * * * railroad * * *, for the purpose of transporting material to and from such * * * railroad and such mine," to "construct and operate a line of railroad from such mine to the most convenient and accessible point on such * * * road." The section then provides: "The owner or operator of

such road shall be governed and controlled by the laws relating to other railroads, so far as applicable, * * *.''

Clearly, we think, the latter section makes section 56-414, which requires the giving of crossing signals, applicable to this railroad of the Mining Corporation.

It is conceded that on this occasion the crew of the train did not give the required signals, in that no bell was rung nor was the ''whistle sounded continuously or alternately'' until the engine had reached the crossing.

The trial court was correct, we think, in instructing the jury that the failure to give the required signals constituted negligence.

Whether the failure to give the required statutory signals was a proximate cause of the collision was for the jury. The jury might well have found that had the bell been rung or the whistle sounded ''continuously or alternately'' until the engine had reached the crossing, as the statute required, the negligent and inattentive driver of the bus would not have brought his vehicle to a stop on the crossing, or, having stopped there, would have removed it from the crossing after he had been made aware by the signals of the approaching train. See *Danville, etc., Ry. Co.* v. *Chattin,* 192 Va. 216, 64 S. E. (2d) 748.

The Mining Corporation earnestly contends that there is no showing that there was a sufficient interval of time for the train to have been stopped after the lookout saw, or should have seen, that the bus was on the track. This contention is predicated upon the testimony of the lookout stationed on the end of the leading car and two other witnesses that when the bus stopped on the crossing the nearest car was only 75 to 100 feet away, and the undisputed evidence that at the speed at which it was traveling the train could not have been stopped within this short distance.

But there is evidence from which the jury might have inferred that the train was farther away when the bus stopped. One witness testified that the bus stopped ''approximately a minute and a half'' before it was hit. Another estimated the time at ''not over five or six minutes'' and later reduced the interval to ''not over three minutes.'' The plaintiff said that she was struck ''Just a matter of seconds, * * * less than a minute,'' after she had stepped off the bus.

Of course, these are only estimates as to the critical interval of time. But the undisputed evidence is that the bus remained

standing a sufficient time for the plaintiff to alight, and, as she says, to "wait" and see whether it would move on immediately or remain standing in order that other passengers might get off there. She observed that another passenger, an elderly man, was leaving his seat and walking forward in the bus for the purpose of getting off. Having determined that she could walk safely in front of the bus she proceeded on her way.

The jury might have concluded from this evidence as well as the other circumstances that the train, at the conceded speed of fifteen miles per hour, was much farther away from the crossing than the witnesses offered by the Mining Corporation said it was when the bus came to a stop, and that it was a sufficient distance therefrom for the lookout, had he been performing his duties, to have applied the brakes and brought the train to a stop before the collision. Again, the jury may have thought that, in any event, there was sufficient time, in the exercise of ordinary care, for the application of the brakes and the slowing down of the train to such a speed as would have materially reduced the force of the impact.

We are of opinion that the trial court correctly ruled that whether there was a sufficient interval of time for the train to have been stopped after the lookout saw, or should have seen, that the bus was on the track was an issue for the jury upon proper instructions.

After the lower court had so ruled the Mining Corporation offered its Instruction No. 6 which read thus:

"The court instructs the jury that if you believe from the evidence that the defendant, Swords Creek Mining Corporation, had a lookout or brakeman on the front end of the front car which was being pushed towards the crossing where the accident occurred by defendant's engine, and if you shall further believe that said bus did not stop on said crossing in front of the approaching car or train until said car was so near to it that he did not have time by the exercise of reasonable care to stop said car and train before striking said bus, then and in that event the court tells the jury that the defendant, Swords Creek Mining Corporation, was not guilty of negligence in failing to stop said engine and cars before striking said bus."

While not artistically phrased, this instruction in effect would have told the jury that if they believed from the evidence that when the bus came to a stop the leading car of the train was so

near to it that the lookout did not have sufficient time by the exercise of reasonable care to stop the train, then he was not guilty of negligence in failing to bring it to a stop before the collision.

The objection to the instruction was that it did not negative the giving of the signals required by the statute. That objection was not well taken. The matter of statutory signals had already been dealt with in other instructions. The failure of the crew to bring the train to a stop before the collision was a separate and distinct ground of negligence and so treated by all of the parties. It was the bus owner's principal defense.

At the request of the plaintiff and the defendant, Selfe, the court had instructed the jury that if the Mining Corporation was negligent in its operation of the train, and in failing to stop the train after the lookout discovered, or should have discovered, the perilous position of the bus, it was liable in damages. But the court refused to give the Mining Corporation's instruction embodying its defense that if, when the bus stopped, the train was so close that by the exercise of ordinary care it could not have been stopped, then the crew was not guilty of negligence. This was one of the Mining Corporation's main defenses. That issue was not submitted to the jury by any other instruction.

We have repeatedly said that each party is entitled to have an instruction given based on his theory of the case, if there is evidence to support it. 10 Mich. Jur., Instructions, § 7, p. 194; 18 Va. and W. Va. Digest (West), Trial, § 203(1), p. 206 *ff.*

■ Here there was ample evidence, to which we have adverted, to support the Mining Corporation's theory of the case, and hence it was reversible error to refuse the instruction.

In our opinion there is no merit in the contention of both of the defendants that the plaintiff was guilty of contributory negligence. Both defendants argue that she was negligent in not observing the approaching train and warning the driver of it.

■ There are several ready answers to this argument. In the first place, there is no evidence that the driver had failed to observe the train, or that her warning would have given him information which he did not already have. In the next place, the gist of the plaintiff's case is that the driver was negligent in stopping the bus so that its rear protruded partly across the track. There is no evidence that the plaintiff knew this. She had the right to presume that he would not stop in such a place of

danger. After getting off the bus she looked and saw nothing "coming or going" for the bus obstructed her view of the approaching train. She then proceeded on her way and was struck by the bus. At most, we think, the issue of the plaintiff's contributory negligence was for the jury and its finding in her favor is conclusive.

This brings us to the final assignment of error made by both defendants that the lower court erred in allowing the plaintiff to introduce hearsay evidence as to the nature and result of her injuries.

The evidence on behalf of the plaintiff was that as the result of the blow received in the collision she had suffered a sprain of the sacroiliac joint, a sprained wrist, a sprain of the right rib, and numerous bruises and contusions. She was examined and treated by Dr. Henderson, a local physician, and by other physicians at the University of Virginia Hospital at Charlottesville.

Over the objection of the defendants she was permitted to testify that Dr. Henderson had told her that an operation "would be the only cure" for the injury to her back and that he "recommended" such an operation.

Over like objections, the plaintiff was permitted to testify what the doctors at Charlottesville had told her with respect to what treatments were necessary. She was permitted to relate the disagreement of the several doctors with respect to what treatment she should receive.

Such evidence was clearly hearsay and inadmissible under elementary rules of evidence.

Moreover, counsel for the plaintiff, over the objection of counsel for the defendants, was permitted in his argument to the jury to refer to and comment on such hearsay evidence. All of this was prejudicial to the rights of the defendants and constituted reversible error.

To summarize our conclusions: The evidence adduced supports the finding of the jury that the defendant, Selfe, was guilty of negligence which was a proximate cause of the plaintiff's injuries and that the plaintiff was free of contributory negligence; the lower court erred in refusing to grant Instruction No. 6, requested by the Mining Corporation, and in admitting hearsay evidence as to the plaintiff's injuries.

The other assignments of error are either without merit or

discuss questions which are unlikely to arise upon a retrial of the case.

Accordingly, the judgment complained of is reversed, the verdict set aside, and the case remanded for a new trial on the quantum of damages as to the defendant, Selfe, and on liability and the quantum of damages as to the defendant, Swords Creek Mining Corporation. But the new trial on liability awarded the Mining Corporation is to be free of the issue of contributory negligence, which, as we have said, has been settled on the previous trial.

*Reversed and remanded.*